# Richmond

E. N. Loving, L. L. Zechini, and W. H. Trent v.
Commonwealth of Virginia.

November 14, 1935.

Present, All the Justices.

The opinion states the case.

*B. B. Campbell* and *L. H. Shrader*, for the plaintiffs in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

The grand jury returned two indictments as true bills against defendants, charging them with rape, and aiding and abetting each other in the commission of rape upon

one Geraldine Thomas. Defendants plead not guilty, and agreed to be tried on both indictments, at the same time, by the same jury. On each indictment the trial jury wrote a verdict of guilty as charged, and fixed the punishment of defendants at confinement in the penitentiary for five years. The court pronounced sentence on one verdict, set the other aside, and continued the latter case for another trial; from that judgment, this writ of error was granted.

Each indictment contained three counts. Count No. 1, in both indictments, charged Loving, Zechini and Trent with having committed rape upon prosecutrix. In the second count of one indictment Loving was charged with the crime as principal in the first degree, and in the third count, Zechini and Trent were charged with aiding and abetting Loving. In the second count of the other indictment, Trent was charged with. the commission of the crime as principal in the first degree, and in the third count Zechini and Loving were charged with aiding and abetting Trent.

Prosecutrix testified that she met defendants for the first time on Thursday evening, September 20, 1934. On that day Zechini and Trent had an engagement to take two other girls on an automobile ride; that she was with one of these girls when the two young men called for her, and after prosecutrix had been introduced to the young men, they agreed to "get a date" for her. Later Loving was introduced as her date, and the six of them drove in the same automobile to a cabin owned by Zechini's uncle, situated between Lynchburg and Rustburg. When the three couples reached the cabin they found no one there; however, they secured a quart of whiskey, which they took to another cabin on the place occupied by the caretaker. Here they drank, danced, etc., until a little before midnight. As soon as the party was over, Miss Thomas was taken to her home in Lynchburg. As the car stopped, the light in her home was turned on, she saw her mother at the door, and immediately requested

the young men to drive on and take the other girls home first, as she did not desire to return home until her mother had retired. It was while returning to Lynchburg from Madison Heights, where the second girl to leave the car lived, that prosecutrix claimed the car was stopped a short distance from the main highway, and there on the back seat, Loving had intercourse with her while Zechini and Trent held her. Later Trent had intercourse with her while Loving and Zechini held her.

The only substantial conflict in the testimony is what happened when the car was stopped. Defendants testified that when Zechini, who was driving his aunt's car, was told that prosecutrix was sick, he pulled the car to the side of the road, and stopped, so prosecutrix would not vomit in the car; that as soon as the car was stopped, prosecutrix, who was sick from the whiskey she had drunk, put her head out of the rear window, and vomited on the running board and fender. That as soon as she was somewhat relieved, they went to a restaurant, gave her a sour pickle, and then carried her home. From there they went to a service station and had the effects of the vomiting on the car, washed off.

Prosecutrix made no immediate report, or complaint of the alleged criminal assault. There was evidence tending to prove her condition was normal on the following Friday, Saturday and Sunday. On Monday she attempted to commit suicide by inhaling gas in a closed room. On the next day, Tuesday, at the continued request of members of her family to know the cause of her attempted suicide, she told her sister and others of the alleged assault.

The fourth assignment of error is based on the action of the trial court in admitting over objections of defendants, certain testimony tending to show that prosecutrix was mentally depressed on the fourth and eighth day after the alleged offense.

It appears that Dr. Peters was called to see prosecutrix on Friday, September 28, some eight days after the alleged

offense and some four days after the attempted suicide. He testified to her physical condition as he then found it. He was asked to state the condition of her nerves, to which he replied, "she was quite depressed." It was at this point that defendants interposed their objection.

The physical and mental condition, as well as the conduct of the prosecutrix, shortly after the alleged offense, is always admissible. The remoteness of the examination by a physician, from the date of the crime, affects its probative force, but not necessarily its admissibility. In this case, counsel for defendants cross-examined prosecutrix in some detail, about her physical and mental condition and conduct, both before and after she had attempted to commit suicide. Defendants having brought out from prosecutrix some evidence in regard to the examination made by Dr. Peters, it was no error to permit Dr. Peters to testify as to both her physical and mental condition at the time he examined her.

After the doctor had testified, Miss Hazel Thomas, a sister of the prosecutrix, in her direct examination, was asked about the attempt at suicide. The court in ruling on the objection made thereto stated: "The reason why, as I recall it, you stated she did that was because of a fuss or difficulty she had with her sweetheart and you undertook to explain it to the jury in your opening statement that way. Now, to come after that has been done and after this prosecutrix has gone on the stand and testified to that without any objection at all, and after you have cross-examined her on it, to exclude that statement from the jury I don't think is proper and I am going to over-rule that motion."

The defendants' position on this assignment of error is inconsistent. On the one hand, they admit that on Monday after the date of the alleged offense prosecutrix was suffering from a severe mental strain; but claimed, and attempted to prove that the cause was due to a difference or fuss she had had on the preceding Sunday, with a Mr. Hudson, "her regular boy friend." On

the other hand defendants contend that if prosecutrix was depressed, evidence tending to establish that fact was inadmissible, because it may have been due to some cause other than the alleged criminal assault made upon her. Defendants themselves brought out the fact that prosecutrix had attempted to kill herself; this is convincing evidence that she was suffering from a severe mental strain. The testimony of Miss Hazel Thomas and Dr. Peters, to which objection was made, is simply corroborative of an admitted fact already introduced. We find no merit in this assignment of error.

When all the evidence had been introduced, the defendant moved the court to require the Commonwealth to elect the charge on which it would ask for a conviction. The trial court stated that it would instruct the jury that there could be but one conviction on the evidence, and with that understanding the case was submitted to the jury. Upon the return of the two verdicts, and before the jury was discharged, the following statements were made in open court:

"By the court: Did you gentlemen overlook these instructions that on this set of facts you could have only one conviction?

"By the foreman of the jury: We sent word and asked about that.

"By the court: Word was brought, 'Should you simply write the verdict on the different indictments.' Better just record those verdicts as rendered.

"By Mr. Coleman: Why not let the jury retire to their room?

"By Judge Campbell: The jury has found their verdict.

"By Mr. Coleman: The jury can retire and reconsider the matter.

"By the foreman of the jury: We considered this thing as one offense.

"By the court: I told you gentlemen—you must not have paid any attention to me—that on this set of facts you could not have but one conviction, if in your judg-

ment there should be a conviction. Didn't you understand that? If you didn't understand that you should have said so. You cannot on the two indictments meet two sets of facts. The facts are identical and apply simply to one case. I expect we had better just record the verdicts as they have been returned."

It is evident that the jury intended to find the defendants guilty of but one of the charges set forth in the two indictments and to fix only one punishment therefor. The court recorded the verdicts as written, and pronounced sentence on defendants in accordance with one of the verdicts, and on the other entered the following order: "The said E. N. Loving, W. H. Trent and L. L. Zechini this day came into court pursuant to their recognizances and were set to the bar. And the court having maturely considered of its decision doth set aside the verdict of the jury heretofore rendered in this case and award a new trial, and doth order that said case be continued generally until the first day of the February, 1935, term of this court. And thereupon the said E. N. Loving, W. H. Trent and L. L. Zechini were released until said time upon their recognizances heretofore entered into in this case."

We are unable to say from this record on what charge the defendants have been convicted. Prosecutrix did not claim that Zechini had, or attempted to have, intercourse with her. The jury may have believed Loving had intercourse with the prosecutrix against her will, while Zechini and Trent held her; or they may have believed that Trent had intercourse with her against her will, while Zechini and Loving held her. These are two separate and distinct offenses, and could not have been committed simultaneously. The court arbitrarily selected the indictment on which it pronounced sentence.

In view of the uncertainty of the findings of the jury, we are constrained to reverse the judgment and remand the case.

*Reversed and remanded.*