699 P.2d 1290

**STATE of Arizona, Appellee,**

v.

**John Leslie HUEY, Appellant.**

**No. 6340.**

Supreme Court of Arizona,
In Banc.

May 21, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Gary A. Fadell, Asst. Attys. Gen., Phoenix, for appellee.

Kemper & Henze by James Hamilton Kemper, Phoenix, for appellant.

CAMERON, Justice.

Defendant, John Leslie Huey, was convicted by a jury and adjudged guilty of one count of kidnapping, A.R.S. § 13–1304, and nine counts of sexual assault, A.R.S. § 13–1406. Because defendant had committed these crimes while on probation from an earlier matter, he was sentenced to life imprisonment without possibility of parole for twenty-five years for the kidnapping, A.R.S. § 13–604.01. He also received a sentence of fifteen and three quarter years on each of the sexual assault charges, to run consecutively with each other and with the kidnapping charge. We have jurisdiction pursuant to Ariz.Const. Art. 6, § 5(3), and A.R.S. §§ 13–4031 and –4035.

Defendant raises two issues on appeal:

1. Did the trial court erroneously admit certain prior bad act testimony?
2. Did the trial court erroneously admit medical testimony concerning the victim's mental condition immediately after the incident?

The facts follow. Defendant was a member of the Dirty Dozen Motorcycle Gang. Sometime in 1983, he met the victim, a nineteen year old woman. At that time, she was involved with another member of the gang, Ed Ibarra. On 12 August 1983, defendant appeared at the victim's trailer in Tucson. He said that Ibarra owed him a favor and she was to be the "payoff." Defendant then forced her into his truck and handcuffed her to the door on the passenger side. On the drive from Tucson to defendant's home in Phoenix, he forced her to remove her clothes, pinched and slapped her vagina and then ordered her to engage in fellatio. He brought her to his home and told her the "honeymoon" was going to begin. He handcuffed her to his bed and forced her to engage in numerous

acts of vaginal, rectal and oral intercourse. At one point, defendant urinated into her mouth and forced her to swallow. Defendant also inserted dildos and a miniature baseball bat into her vagina and rectum. Additionally, defendant poured hot candle wax into her vagina. During this time, she was ordered to refer to him as "Daddy." This entire ordeal lasted approximately one week before the victim was able to escape. Defendant did not deny these acts but contended the conduct was with the victim's consent. From his conviction and sentence, defendant appeals.

## PRIOR BAD ACT TESTIMONY

Over defendant's objection, the trial court admitted the testimony of a woman who had undergone a similar experience with defendant. The witness testified that defendant convinced her to drive to Prescott with him. On the drive back to Phoenix, he forced her to remove her clothes and then fondled her vagina. Upon arriving at his home in Phoenix, defendant told his wife to prepare a room for the witness, at which point defendant's wife said to her "Happy Honeymoon." Defendant took the witness into the bedroom and forced her to have sexual intercourse with him. During this time, he ordered her to refer to him as "Daddy." He then took her back to her home, handcuffed her to the bed and had anal and vaginal intercourse with her. Defendant's wife informed her that this was an initiation. When the witness objected, defendant's wife and another woman inserted dildos into her vagina and rectum. Photographs were taken of these events and admitted in evidence. The witness was in defendant's control for approximately three months before she was able to escape. This testimony was admitted by the trial court to demonstrate that defendant had a common scheme or plan to subjugate, torture and kidnap women against their will as part of this plan.

■ Generally, evidence of a defendant's prior bad acts is inadmissible solely to prove his character. *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978); *State v.*

*Moore*, 108 Ariz. 215, 495 P.2d 445 (1972). Such evidence may, however, be admissible for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b), Arizona Rules of Evidence, 17A A.R.S.

■ In the instant case, the prior acts as described by the witness and illustrated by the photographs amply supported admission of the evidence as part of a common scheme or plan. Not only were the prior acts distinctive and unique, but there were similarities between the prior acts and the acts for which defendant was being tried "when normally there could be expected to be found differences." *State v. Jackson*, 124 Ariz. 202, 603 P.2d 94 (1979). The evidence of defendant's prior acts was properly admitted to show a common scheme or plan pursuant to Rule 404(b), Arizona Rules of Evidence 17A A.R.S.

Defendant claims that the "common scheme or plan" in the instant case was the equivalent of modus operandi and that pursuant to *State v. Roscoe*, 145 Ariz. 212, 700 P.2d 1312 (1984), such testimony is only admissible when identity is in issue. Defendant, therefore, contends that since there was no question of identity, the evidence was not properly admitted. We do not agree.

Admittedly, in *Roscoe, supra,* the state used evidence of modus operandi to prove identity. We have held, however, that evidence of a modus operandi may also be used to prove other contested elements in the case. For example, in a case in which common scheme or plan was the equivalent of modus operandi, we approved the admission of such evidence to demonstrate criminal intent.

The trial court in this case found evidence of the first fire to fall within this exception and we agree. The similarity in the manner in which the prior fire was set and the one charged herein evidences a common scheme or plan which shows intent or, at the very least, absence of mistake. In both cases, defendant and Joe Blount planned the fire. In both

cases, Joe Blount spread flammable liquids around the office and set the fire, and in both cases, defendant submitted blatantly fraudulent insurance claims for fire damage. We find no error. *State v. Rose, supra; State v. Fierro,* 107 Ariz. 479, 489 P.2d 713 (1971).

*State v. Mulligan,* 126 Ariz. 210, 215, 613 P.2d 1266, 1271 (1980).

In the instant case, defendant admitted having committed the acts charged but maintained that the victim had consented. There was no question of identity. There was, however, the question of the defendant's intent to kidnap and assault the victim against her will. The state offered the prior bad acts to demonstrate that defendant was engaging in a plan of kidnapping women against their will and then degrading and controlling them through sexual abuse. The treatment of the witness and the victim was similar in so many significant aspects that it could be reasonably inferred that the motive was the same for both incidents. We find no error.

### EXPERT TESTIMONY

During its case-in-chief, the state called Dr. Lesley Alan McEldoon, a psychiatrist who had treated the victim after her escape. He testified that, initially, she was extremely upset, irritable and frightened. He stated that she told him that she had been kidnapped and raped. He also testified that her mental state was consistent with the experience she described to him. He described her condition as an "[a]djustment reaction with mixed emotional features" which occurs when there was "a psycho-social stressor that is temporarily present * * *." Defendant argues that Dr. McEldoon was essentially describing "rape trauma syndrome." Defendant further asks us to hold that evidence of "rape trauma syndrome" is inadmissible in a rape case to prove that a rape occurred.

The term "rape trauma syndrome" was first used in 1974 in an article describing the recurring pattern of emotional distress in rape victims. Burgess & Holmstrom, *Rape Trauma Syndrome,* 131 Am.J. of

Psychiatry 981 (1974) *cited in State v. Saldana,* 324 N.W.2d 227, 229 n. 1 (Minn. 1982). The term refers to a type of post-traumatic stress disorder exhibited by rape victims. *See* Packer, *Post-traumatic stress disorder and the insanity defense: a critical analysis,* 11 J. of Psych. & Law 125 (1983). The disorder is essentially a two phase response pattern in which the first phase is marked by fear of physical injury, mutilation and death. The second begins from two to six weeks after the assault and is characterized by a change in lifestyle, dreams, nightmares, depression and the development of fears related to the attack. Comment, *Expert Testimony on Rape Trauma Syndrome: Admissibility and Effective Use in Criminal Rape Prosecution,* 33 Am.U.L.Rev. 417, 426–37 (1984). Some researchers have described the syndrome in terms of a four phase phenomenon; however, all agree that the basic stages are an acute stage and a long term resolution stage. *Id.* at 417 n. 2. Since the discovery of this syndrome, five courts have had occasion to determine whether evidence of rape trauma is admissible in criminal cases. *People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984); *State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982); *State v. Saldana, supra; State v. Taylor,* 663 S.W.2d 235 (Mo.1984); *State v. Liddell,* — Mont. —, 685 P.2d 918 (1984). In those cases, the testimony consisted of a description of both the stages of rape trauma and the victim's mental state and a conclusion that the victim exhibited the symptoms found by other rape victims. Two courts have found this testimony admissible, *Marks, supra; Liddell, supra,* and three have excluded it, *Taylor, supra; Saldana, supra, Bledsoe, supra.*

■ We do not find that Dr. McEldoon's testimony described this phenomenon. First, he never used the term "rape trauma syndrome." Second, he did not describe the two phases outlined in the Burgess & Holmstrom article. Rather, he stated that the victim was initially distraught and then later began to calm down. His testimony

centered more on general observations of stress than on a description of a unique psychological response and was admissible. *Cf. Alphonso v. Charity Hosp. of Louisiana,* 413 So.2d 982, 987 (La.App.1982) (making a distinction between symptoms of post-traumatic stress disorder and rape trauma syndrome).

We realize that in certain situations the fact that a psychiatrist did not adequately describe rape trauma syndrome will not be a sufficient answer to the question of admissibility. In *Saldana, supra,* one of the cases excluding such evidence, the witness never used the term while giving his testimony. The court, however, found that this was essentially a description of rape trauma syndrome and then looked to the impact it would have on the jury: "[p]ermitting a person in the role of an expert to suggest that because the complainant exhibits some of the symptoms of rape trauma syndrome, the complainant was therefore raped, unfairly prejudices the appellant by creating an aura of special reliability and trustworthiness." *Id.* at 230. The court also expressed the belief that rape trauma syndrome as a fact-finding tool has not reached a sufficiently high level of reliability in the scientific community. *Id.* We recognize that a jury may give great weight to evidence where the expert, although not mentioning the words "rape trauma syndrome," gives a detailed list of its symptoms, compares them with the victim's mental state and then concludes that because of the similarities the victim was raped. The same problem may arise where the expert gives only a few of the symptoms outlined by Burgess & Holmstrom, or states them incorrectly, but again uses them as an indicator that there was a rape. *Cf. Taylor, supra* at 240 ("[T]here are inherent implications from the use of the term 'rape trauma syndrome,' for it suggests that the syndrome may only be caused by rape * * *.")

It does not follow, however, that evidence of a rape trauma may not be admissible when there is evidence of the intercourse and the defendant alleges consent.

The Kansas Supreme Court discussed the matter in a case to prove the rape itself. As the Kansas Supreme Court stated:

An examination of the literature clearly demonstrates that the so-called "rape trauma syndrome" is generally accepted to be a common reaction to sexual assault. See McCombie, The Rape Crisis Intervention Handbook, pp. 124–26 (1980); Comprehensive Textbook of Psychiatry §§ 21.1d, 24.15, pp. 1519, 1804–05 (Kaplan, Freedman and Sadock 3rd ed. 1980); Warner, Rape & Sexual Assault, pp. 145–49 (1980); Burgess & Holmstrom, Rape: Crisis & Recovery, pp. 35–47 (1979); Katz & Mazur, Understanding the Rape Victim, pp. 215–31 (1979); E. Hilberman, The Rape Victim, p. 36 (1976); Burgess & Holmstrom, Rape: Victims of Crisis, pp. 37–51 (1974). As such, qualified expert psychiatric testimony regarding the existence of rape trauma syndrome is relevant and admissible in a case such as this where the defense is consent.

*State v. Marks,* 231 Kan. at 654, 647 P.2d at 1299.

The Montana court has also held the same way. *State v. Liddell, supra.* Although we might have some difficulty in upholding the admissibility of rape trauma syndrome to prove the existence of a rape, we believe, however, if properly presented by a person qualified by training and experience such as a psychiatrist or psychologist, that such evidence is admissible to show lack of consent. This testimony would not invade the province of the jury. The expert would be subject to cross-examination and the jury could then determine what weight the evidence is to receive.

As the Montana Supreme Court stated: "Psychiatric testimony is admissible to aid a jury in determining whether there was consent to engage in a sexual act which all parties agree occurred. It remains up to the jury to determine whether the evidence is credible." *State v. Liddell,* — Mont. at —, 685 P.2d at 923.

■ In the instant case, the question was one of consent. Therefore, testimony concerning rape trauma syndrome would have been admissible. We find no error.

We have searched the record for fundamental error pursuant to A.R.S. § 13–4035, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969) and have found none.

The convictions, judgments, and sentences of defendant are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ.