**Anne E. SPENCER, Plaintiff,**

v.

**GENERAL ELECTRIC CO. and James Russell Neal, Defendants.**

Civ. A. No. 87–1214–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 23, 1988.

Jane Lang McGrew, Weissbrodt, Swiss & McGrew, Washington, D.C., for plaintiff.

Peter G. Nash, Ogletree, Deakins, Nash, Smoak & Stewart, Washington, D.C., for General Elec. Co.

Philip J. Hirschkop, Bernard J. DiMuro, Alexandria, Va., for Neal.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

The issue presented, novel for this jurisdiction, is whether plaintiff, an alleged rape victim, may introduce expert testimony that she suffers from "post-traumatic stress disorder" (PTSD) to prove that a rape actually occurred. The Court holds that such testimony is inadmissible because (i) evidence of PTSD is not a scientifically reliable means of proving that a rape occurred, and (ii) the probative value of such evidence is outweighed by its unfair prejudicial effect. Rule 403, Fed.R.Evid.

### Facts

Plaintiff, Anne Spencer, a General Electric employee, alleged that her former supervisor, James Neal, sexually harassed and assaulted her over a three-year period [1] and ultimately raped her in October 1987. On the basis of these allegations, she brought state tort claims for assault and battery and intentional infliction of emotional distress against defendant Neal. The same torts were alleged against General Electric on grounds of respondeat superior and ratification of Neal's acts. Plaintiff also brought state tort claims against General Electric for negligent supervision and failure to provide a safe work place. Finally, plaintiff asserted a Title VII sexual harassment claim against General Electric on both hostile environment and *quid pro quo* grounds.[2] As a result of numerous motions to dismiss and for summary judgment, the Court dismissed plaintiff's claims of negligent supervision and failure to provide a safe work-place for failure to state a claim upon which relief may be granted. The Court held, however, that General Electric might be liable for the alleged acts of Neal under the doctrine of respondeat superior. The Court further held that plaintiff's suit was not barred by the exclusivity provision of the Virginia Worker's Compensation Act where the employer or coemployee commits an intentional tort with the intent to injure.[3]

---

**1.** More specifically, plaintiff contended that defendant Neal subjected her to repeated sexual assaults, including an attempted rape, fondling and biting of her breasts and dozens of digital penetrations of her vagina.

**2.** *See Katz v. Dole,* 709 F.2d 251, 254 (4th Cir. 1983) (explains the "two varieties" of sexual harassment: "harassment that creates an offensive environment, [hostile environment], and harassment in which the supervisor demands sexual consideration in exchange for job benefits [quid pro quo]"); *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982) (quid pro quo/hostile environment case discussed in *Katz*); *see also Swentek v. USAIR,* 830 F.2d 552 (4th Cir.1987) (to prove Title VII hostile environment claim plaintiff must show conduct was unwelcome, harassment was based on sex, harassment sufficiently severe to create abusive working environment, and employer had actual or constructive knowledge of hostile environment).

**3.** *See Spencer v. General Electric,* Civil Action No. 87–1214–A (E.D.Va. May 24, 1988) (unpublished Order).

At trial,[4] plaintiff introduced the testimony of Dr. Robert Simon, a forensic psychiatrist, who testified that plaintiff suffered from PTSD as a result of Neal's alleged sexual assaults and the October 1987 rape. PTSD is a condition recognized in psychiatry as the emotional reaction to a traumatic event, including rape.[5] Dr. Simon testified that plaintiff developed PTSD as a result of Neal's sexual harassment and assaults during the summer of 1987 and that the alleged October 1987 rape was the "precipitating event" that brought out plaintiff's PTSD. Simon also testified that the only psychological stressors that could cause plaintiff's PTSD were the alleged sexual assaults and the rape, and that but for the rape, plaintiff would not have developed PTSD in October 1987.[6]

The rape was central to plaintiff's case. Whether it occurred was hotly disputed. There were no witnesses to the alleged rape, and defendant Neal denied the rape occurred as vehemently as plaintiff described its happening. Not surprisingly, therefore, plaintiff sought to offer Dr. Simon's testimony in her state tort claims and Title VII claim as proof that the rape actually occurred. Her argument is a simple syllogism: (1) Dr. Simon says she has PTSD; (2) only a major psychological stressor, such as rape, triggers PTSD and the only such stressor plaintiff experienced in the pertinent time frame was the alleged rape (3) *ergo* the rape occurred. Ultimately, the Court excluded Dr. Simon's testimony for this purpose,[7] and this Memorandum Opinion records the Court's reasoning.

4. The Court initially denied defendant Neal's motion to sever and try separately the state tort claims and the Title VII claim. The matter then proceeded to trial and, at the conclusion of the plaintiff's case, the Court granted defendant General Electric's motion for a directed verdict on the state tort claims on the ground that plaintiff had not made out jury issues on scope of employment or ratification. Thereafter, plaintiff moved to nonsuit the remaining state claims against defendant Neal and proceed solely on the Title VII claims against General Electric. The Court allowed the nonsuit without prejudice, but pursuant to certain conditions. The Order entered in this regard also identified the rulings in the May 24 Order as having been entered pursuant to Rule 54(b), Fed.R.Civ.P., in order to permit the parties to appeal those points promptly. *See Spencer v. General Electric,* Civil Action No. 87–1214–A (E.D.Va. June 2, 1988) (unpublished Order).

5. PTSD, by definition, may be caused by a variety of traumatic events outside the range of common experiences, such as military combat, bombing, torture, airplane crashes, or rape. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 236–37 (3d ed. 1980) [hereinafter DSM–III]. Symptoms of PTSD include reexperiencing the traumatic event through thoughts and dreams, sleep disturbances, memory loss, inability to concentrate, and avoidance of activities reminiscent of the stressful incident. DSM–III at 238. When rape is the traumatic event causing the symptoms, some psychiatrists refer to the disorder as "rape trauma syndrome" (RTS). *See generally* Note, *Expert Testimony that Rape Victim Suffered Post–Traumatic Stress Disorder is Admissible to Rebut a Defense of Consent,* State v. Allewalt, 16 U.Balt.L.Rev. 141, 142 (1986); Comment, *The Use of Rape Trauma Syndrome as*

*Evidence in a Rape Trial: Valid or Invalid?,* 21 Wake Forest L.Rev. 93, 94 (1985).

6. Dr. Simon did not testify that it was his opinion that Neal indeed raped plaintiff. His testimony, however, clearly implied that plaintiff was raped. Dr. Simon testified that one of plaintiff's PTSD symptoms was a "reexperiencing phenomenon," and that in plaintiff's reexperiencing symptomatology, *i.e.,* her nightmares, she reexperienced not only the rape but also had the experience that someone was trying to kill her and come after her. Simon testified that this symptom evidenced the sexual harassment experienced by plaintiff as well as the rape. (Testimony of Dr. Simon taken May 26, 1988, Partial Trial Transcript at 41–42) [hereinafter "TR"]. Simon further testified that he obtained "as complete a history of [plaintiff] as [he] could, and [he] did not find evidence of anything else that would meet the criteria for a psychological stressor that was outside of usual human experience that would produce [plaintiff's] symptoms." (TR at 44). Moreover, Simon testified that plaintiff's nightmares were not fake because they were "distorted" rather than exact replicas of the alleged events. (TR at 54).

7. The Court, however, permitted Dr. Simon's testimony to establish plaintiff's damages. *See Division of Corrections v. Wynn,* 438 So.2d 446 (Fla.App.1983) (plaintiff raped by work-release inmate; expert testimony of RTS permitted to illustrate trauma experienced by a rape victim); *Alphonso v. Charity Hospital,* 413 So.2d 982 (La. Ct.App.) (court upheld $50,000 award for PTSD suffered as a result of two rapes), *cert. denied,* 415 So.2d 952 (La.1982); *White v. Violent Crimes Compensation Board,* 76 N.J. 368, 388 A.2d 206 (1978) (rape victim sought recovery for injuries under N.J.Criminal Injuries Compensa-

## Analysis

The issue presented is whether Dr. Simon's testimony that plaintiff suffers from PTSD may be offered to prove that plaintiff was raped. The Court holds that such testimony is inadmissible because (i) evidence of PTSD is not a scientifically reliable means of proving that a rape occurred, and (ii) the probative value of Simon's testimony is outweighed by its prejudicial effect.

Neither the Virginia courts nor the Fourth Circuit have addressed whether evidence of PTSD or "rape trauma syndrome" (RTS) [8] is admissible to prove that a rape actually occurred. Other courts, however, have addressed this issue, with sharply divided results. Some states have held such evidence admissible.[9] Others have held such testimony inadmissible.[10] Yet other states, while excluding RTS or PTSD evidence to prove that a rape occurred, have indicated that some evidence regarding an alleged rape victim's emotional state may be admissible to support the victim's claim.[11]

The Court finds persuasive and adopts the rationale of those decisions which have excluded evidence of PTSD or RTS. Evidence of PTSD occasioned by rape (or RTS)

---

tion Board; evidence of RTS admissible to establish damages).

**8.** RTS is a type of post-traumatic stress disorder. The DSM–III, which is the primary reference for diagnosing mental disorders, does not officially recognize RTS as a mental disorder but does make specific mention of rape as a potential precipitant of PTSD. Indeed, the diagnostic criteria for RTS and PTSD occasioned by rape are the same. *See* Buchele & Buchele, *Legal and Psychological Issues in the Use of Expert Testimony on Rape Trauma Syndrome,* 25 Washburn L.J. 26, 28–29 (1985). In short, RTS is PTSD precipitated by rape.

**9.** *See, e.g., State v. Huey,* 145 Ariz. 59, 699 P.2d 1290 (1985) (PTSD evidence admissible where defendant claims consent; expert subject to cross-examination therefore jury can determine weight to be accorded expert testimony); *State v. McQuillen,* 236 Kan. 161, 689 P.2d 822 (1984) (testimony permitted that complainant possessed symptoms consistent with RTS without stating that disorder was the result of rape); *State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982) (psychiatrist examined victim two weeks after alleged rape; court admitted testimony on RTS as evidence that a rape occurred when defendant claimed consent); *State v. Allewalt,* 308 Md. 89, 517 A.2d 741 (1986) (5–2 opinion held testimony on PTSD admissible in rape case to prove lack of consent where expert did not state conclusively that the cause of the PTSD was the rape, and where expert never used the term "rape trauma syndrome"); *State v. Liddell,* 685 P.2d 918 (Mont.1984) (evidence of RTS admissible to prove rape occurred where defendant claimed consent).

**10.** *See, e.g., People v. Bledsoe,* 36 Cal.3d 236, 681 P.2d 291, 203 Cal.Rptr. 450 (1984) (RTS not intended to be a forensic fact-finding device but rather a therapeutic tool used to identify, treat, and predict emotional problems); *State v. Saldana,* 324 N.W.2d 227, 231 (Minn.1982) (expert testimony on RTS inadmissible because such testimony "was a legal conclusion which was of

no use to the jury"); *State v. Taylor,* 663 S.W.2d 235, 241 (Mo.1984) (en banc) (expert testimony on RTS inadmissible because such testimony "carried with it an implied opinion that the victim had told the truth"); *State v. Black,* 109 Wash.2d 336, 745 P.2d 12 (1987) (evidence of RTS inadmissible to prove lack of consent because not scientifically reliable under *Frye* and danger of unfair prejudice).

**11.** *See People v. Bledsoe,* 36 Cal.3d 236, 681 P.2d 291, 203 Cal.Rptr. 450 (1984) (RTS testimony inadmissible to prove rape occurred, but evidence of emotional and psychological trauma after an alleged rape may be admissible); *Terrio v. McDonough,* 16 Mass.App. 163, 450 N.E.2d 190, 198 (1983) (expert testimony on RTS as to manner in which victims react to rape held admissible where testimony "cast in tentative generalities, without regard to the incident or persons involved" in case, and where expert did not testify that plaintiff had, in fact, been raped); *People v. Pullins,* 145 Mich.App. 414, 378 N.W.2d 502 (1985) (RTS testimony inadmissible to prove rape occurred; evidence of such trauma is relevant but should not be presented with an aura of scientific reliability unless *Frye* test is met); *State v. Taylor,* 663 S.W.2d 235 (Mo.1984) (en banc) (RTS testimony inadmissible but expert could testify that victim's symptoms are consistent with a traumatic experience); *State v. Ogle,* 668 S.W.2d 138 (Mo.App. 1984) (expert testimony on reactions of rape victim admissible where expert did not testify that victim suffered from RTS or that she had been raped).

Although Virginia courts have never addressed whether PTSD or RTS evidence is admissible for any purpose, Virginia does permit evidence of the physical and mental condition of a rape victim. *See Loving v. Commonwealth,* 165 Va. 761, 182 S.E. 224 (1935) (physician examined prosecutrix eight days after alleged rape; court permitted testimony as to alleged victim's mental and physical condition).

is not a scientifically reliable means of proving that a rape occurred.[12] PTSD is simply a diagnostic category created by psychiatrists; it is a human construct, an artificial classification of certain behavioral patterns. RTS was developed by rape counselors as a therapeutic tool to help identify, predict, and treat emotional problems experienced by the counselor's clients or patients. It was not developed or devised as a tool for ferreting out the truth in cases where it is hotly disputed whether the rape occurred. "Unlike fingerprints, blood tests, and lie detector tests, RTS was not devised to determine the 'truth' or accuracy of a particular past event—i.e., whether, in fact, a rape in the legal sense occurred." *People v. Bledsoe*, 36 Cal.3d 236, 249–50, 681 P.2d 291, 203 Cal.Rptr. 450 (1984), *cited in State v. Black*, 109 Wash.2d 336, 745 P.2d 12, 18 (1987). *See generally* Burgess & Holmstrom, *Rape Trauma Syndrome*, 131 Am.J. Psychiatry 981 (1974) (describing RTS and its symptoms). As stated in *State v. Saldana*, 324 N.W.2d 227 (Minn.1982), "[t]he scientific evaluation of rape trauma syndrome has not reached a level of reliability that surpasses the quality of common sense evaluation present in jury deliberations." 324 N.W.2d at 230.

Several courts which have admitted PTSD or RTS evidence have applied the *Frye* test and have found that the symptoms encompassed by these disorders are "generally accepted to be a common reaction to sexual assault." *Black*, 745 P.2d at 17 (citing *Marks*, 647 P.2d at 1299, *Huey*, 145 Ariz. at 63, 699 P.2d 1290, *Allewalt*, 308 Md. at 107, 517 A.2d at 750 (RTS "is generally accepted to be a common reaction to sexual assault")).[13] The Court finds, however, that the relevant issue is not whether rape victims may display certain symptoms, but "whether the presence of various symptoms, denominated together as 'rape trauma syndrome' [or PTSD], is a scientifically reliable method admissible in evidence and probative of the issue of whether an alleged victim was raped." *Black*, 745 P.2d at 18 (citing *Allewalt*, 308 Md. at 115, 517 A.2d 741 (Eldridge, J., dissenting)). For the reasons stated, it is not. Such evidence is therefore inadmissible under *Frye*.[14] *See also State v. Taylor*, 663 S.W.2d 235, 241 (Mo.1984) (en banc).

▆ Striking support for this conclusion is furnished by the methodology Dr. Simon used in this case. It bore little, if any, resemblance to traditional scientific or medical methodologies. Acting more like a conventional investigator, Dr. Simon interviewed numerous witnesses, and read at least a dozen depositions in an effort to reach a judgment as to who was truthful and who was not. In effect, Dr. Simon sought to perform the jury's function of determining the credibility of the witnesses and the truth of the testimony. This is not traditional medicine, psychiatry or science; it is traditional jury-factfinding. To permit Dr. Simon to testify on whether in his opinion the rape occurred usurps the jury's

---

**12.** See *Frye v. United States*, 293 F. 1013 (D.C. Cir.1923). "[W]hile courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." 293 F. at 1014.

**13.** *See supra* note 9.

**14.** At least one court, however, had held that the *Frye* test is inapplicable in determining the admissibility of RTS testimony. In *People v. Hampton*, 746 P.2d 947 (Colo.1987) (en banc), the court stated that the *Frye* test is generally applied to novel scientific devices and processes involving the manipulation of *physical* evidence,

such as lie detectors. 746 P.2d at 950. The court found that the admission of RTS evidence is better governed by C.R.E. 702 (Fed.R.Evid. 702), which states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In *Hampton*, however, the court was not faced with whether expert testimony concerning PTSD or RTS was admissible to prove that a rape occurred. There, the expert testified concerning the reaction of rape victims generally, and did not interview or contact the alleged victim in that case. 746 P.2d at 951.

prerogative [15] and would result in simply pitting one expert against another on the issue of the witnesses' credibility and the truth of disputed facts.[16]

Expert evidence on PTSD to prove that a rape occurred is also inadmissible because the probative value of such evidence, if any, is outweighed by its unfair prejudicial effect. *See* Fed.R.Evid. 403. Here, Dr. Simon's testimony is that (i) plaintiff suffers from PTSD, and (ii) plaintiff would not have suffered from PTSD but for a rape.[17] Plaintiff therefore asserts that defendant Neal raped plaintiff. In essence, Dr. Simon's testimony constitutes an opinion as to the guilt of the defendant. Such testimony is inadmissible.

> Permitting a person in the role of an expert to suggest that because a complainant exhibits some of the symptoms of rape trauma syndrome, the [plaintiff] was therefore raped, unfairly prejudices the [defendant] by creating an aura of special reliability and trustworthiness. Since jurors of ordinary abilities are com-

petent to consider the evidence and determine whether the alleged crime occurred, the danger of unfair prejudice outweighs any probative value. To allow such testimony would invade the jury's province of fact-finding and add confusion rather than clarity.

*Saldana,* 324 N.W.2d at 230, *cited in Black,* 745 P.2d at 19.[18] This analysis is entirely persuasive and apt and is therefore adopted here. Dr. Simon's testimony has little probative value on whether the rape occurred and its aura of scientific basis renders it unfairly prejudicial. Accordingly, a Rule 403 calculus dictates exclusion of Dr. Simon's PTSD opinion insofar as it is offered to prove occurrence of the disputed rape.

In sum, the Court holds that expert testimony that a rape victim suffers from PTSD is inadmissible to prove that a rape occurred. The Court does not decide today whether evidence of PTSD may be admit-

---

**15.** Expert testimony on credibility invades the province of the jury and is inadmissible. *See State v. Saldana,* 324 N.W.2d 227, 231 (Minn. 1982) ("Once a witness is deemed competent, expert opinions concerning the witness's reliability in distinguishing truth from fantasy are generally inadmissible because such opinions invade the jury's province to make credibility determinations."); *See also U.S. v. Azure,* 801 F.2d 336 (8th Cir.1986) (error to permit pediatrician to give opinion as to truth of child sexual abuse victim's story).

**16.** This is precisely what would have occurred in the instant case had Dr. Simon's testimony been allowed. Defendants' expert, Dr. Richard Ratner, a psychiatrist who examined plaintiff, testified that plaintiff does not suffer from PTSD, but rather diagnosed her as having a "histrionic personality type." (Trial Transcript taken June 3, 1988, at 8–112) [hereinafter TR8]. According to Dr. Ratner, plaintiff's behavior and symptomatology are not consistent with someone who suffers from PTSD as the result of a rape. For example, plaintiff worked as a rape counselor after the alleged rape occurred. Ratner testified that "[s]omeone who is going to rape centers and becoming a counselor is almost on its face not someone who has PTSD." (TR8–134). This is so because people who suffer from PTSD "will not go back and deal with the trauma.... That's the whole fundamental idea of what PTSD is: that they are stuck, that they cannot assimilate it [the rape] and get past it." (TR8–134). Simon also testified that plain-

tiff's admitted consensual sexual activity after the alleged rape is additional evidence that she does not suffer from PTSD. (TR8–137). In essence, Dr. Ratner does not believe plaintiff's story. Like Dr. Simon, Dr. Ratner is giving his opinion on the credibility of plaintiff and the various other witnesses as well. *See State v. Taylor,* 663 S.W.2d 235, 241 (Mo.1984) (en banc) (jury competent to determine victim's credibility, otherwise "trials could degenerate to a battle of experts expressing opinion on the substance of witness' veracity"). Some observers might see a resemblance between a battle of experts expressing opinions on witness' veracity and the ancient use of champions in trial by battle where the champions were in effect "expert" witnesses who asserted facts not on their own knowledge, but by force of arms. *See* 1 W.S. Holdsworth, A History of English Law 309 (7th ed. 1956) (champions, recognized by statute in 1275, were in effect witnesses who asserted facts not on their own knowledge, but by force of arms).

**17.** *See supra* note 6.

**18.** *See also Bledsoe,* 36 Cal.3d at 251, 681 P.2d 291, 203 Cal.Rptr. 450; *State v. Taylor,* 663 S.W.2d 235, 241 (Mo.1984) (en banc) (expert testimony on RTS excluded; "his entire testimony that the victim suffered from rape trauma syndrome carried with it an implied opinion that the victim had told the truth in describing the rape").

ted for purposes other than proving damages.[19]

An appropriate Order has been entered.

---

19. *See People v. Hampton,* 746 P.2d 947 (Colo. 1987) (en banc). There, the Supreme Court of Colorado held that expert testimony concerning RTS was admissible to explain a victim's delay in reporting a rape. The expert's testimony was limited in scope; she testified concerning the reactions of rape victims generally and none of her testimony concerned that particular victim. Indeed, the court in *Hampton* disapproved of the prosecutor's use of the expert's testimony in closing argument to argue that the victim had been raped. 746 P.2d at 953.