**STATE of Tennessee, Appellee,**

v.

**Timothy ASHBURN, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

July 6, 1995.

Permission to Appeal Denied
Dec. 11, 1995.

John E. Eldridge, Knoxville, at trial, L. Jeffrey Hagood, Knoxville, on appeal, for Appellant.

Charles W. Burson, Attorney General, and Jennifer L. Smith, Assistant Attorney General, Nashville, Charles Hawk, District Attorney General, and Roger Delp, Assistant District Attorney General, Kingston, for the State.

## OPINION

WALTER C. KURTZ, Special Judge.*

This is an appeal by the defendant [1], Timothy Ashburn, from a judgment approving a jury verdict finding the defendant guilty of aggravated kidnapping and three (3) counts of aggravated rape. The trial court sentenced the appellant to eight (8) years for the kidnapping offense and seventeen (17) years on each of the aggravated rape offenses with all sentences to run concurrently. The issues presented for appeal are: (1) whether the trial court erred in excluding expert testimony; (2) whether the trial court erred in admitting certain evidence; (3) whether the prosecutor's comments during closing argument were proper. We affirm the judgment of the trial court.

Although sufficiency of the evidence has not been raised, a review of the facts in the case is necessary in order to understand and determine the assignments of error.

The victim, J.L., was discharged from the Army on January 14, 1993 at Fort Bragg, North Carolina and left for his home in Mississippi on January 16, 1993. He was driving through Roane County, Tennessee on Interstate 40 at approximately 11:00 p.m. and stopped at a rest area when his car broke down while still in the travel lane of the rest area. The defendant, Timothy Ashburn, pulled his car directly behind the victim's car and offered to take the victim to the next exit off the interstate to use the phone. The defendant then helped the victim push his car to the side of the road and the two went down Interstate 40 west. The defendant put his hand on the victim's thigh three times and the victim moved the defendant's hand each time and told the defendant not to do that again. The defendant then pointed

what appeared to the victim to be a .22 revolver at the victim and ordered him to remove his pants. The defendant next told the victim to get down on his knees in the floorboard of the car and drove to a secluded area near the third exit west of the rest area and stopped. Defendant then forced victim to remove all his clothes and forced the victim to perform or submit to a number of sex acts. The defendant then drove the victim back to the opposite side of the road from the rest area and allowed him to leave. The victim was then able to flag down a Tennessee Highway Patrol Trooper (Sergeant Charles David Laxton) who called for a wrecker and Officer Hawn from the Sheriff's Department. About 1:00 the following morning the victim picked the defendant's photo from a photo identification spread which contained a total of six (6) pictures.

Sergeant Charles David Laxton, a ten year veteran of the Tennessee Highway Patrol, testified that on May 17, 1988, he confiscated an expired Tennessee drivers license from the defendant after questioning him in the east-bound rest area of Interstate 40 in Roane County at night. The defendant was in possession of a pair of handcuffs and a starter's pistol at the time. This witness saw the defendant in the west-bound rest area on January 15, 1993 (the night preceding the incident in this case) and made a note of the tag number and the defendant's name. Upon hearing victim's story he compiled a photo line-up containing the driver's license photo of the defendant and five others. The victim picked the defendant's photo from this line-up. Sergeant Laxton also testified that he saw the defendant in the east-bound rest area on January 16, 1993 and that on this occasion the defendant had "male pornographic magazines" in his possession.

The defendant testified that the pistol and handcuffs seen by Sergeant Laxton were plastic toys that belonged to his ex-wife's four year old twin nephews. He stated that he had gone to the rest area on January 16, 1993 to purchase marijuana from "John".

---

* Judge Kurtz was appointed to sit with the Court of Criminal Appeals at Knoxville by order of the Chief Justice of the Supreme Court dated December 28, 1994.

1. The terms defendant and appellant are used interchangeably.

The defendant said that upon arriving at the rest area he nearly ran into the back of the victim's car which had broken down in the road. He then helped the victim push his car out of the road and agreed to take the victim to a gas station to get a tow truck. The defendant stated that while on the way to a service station the victim pulled a six to eight inch knife with a serrated back edge and forced him to drive to a secluded area off the interstate where he (the defendant) was forced to perform oral sex on the victim and the victim performed oral sex on him.

The defense wanted to call Dr. Charles George Rodwell for the express purpose of "corroborat[ing] the testimony of Mr. Ashburn." The trial judge would not allow the testimony but he appropriately allowed an offer of proof. See T.R.E. 103(a)(2).

The psychiatrist testified that the defendant suffered from post traumatic stress disorder as a result of being the victim of rape.[2] He also was of the opinion that the defendant had "a major depression." The Doctor testified that he formed this opinion after reading the evaluation of the "intake nurse", a report from Lakeshore Mental Health Institute and a thirty-minute interview with the defendant. On cross-examination the psychiatrist had difficulty in explaining why being arrested, jailed and tried for a serious felony would not also result in symptoms of stress disorder.

■ The appellant contends that the trial court erred in excluding this expert testimony concerning post-traumatic stress disorder reportedly suffered as a result of the defendant being raped. The appellant argues that this evidence was offered to corroborate the testimony of the appellant. The appellant further contends that because the ultimate issue in this case amounts to a "swearing contest" between the appellant and the victim, the evidence presented by the psychiatrist would shed light on who did what.

■ The issue on the exclusion of the expert testimony is not one of whether the trial judge could have allowed the testimony but rather, did he abuse his discretion by excluding the evidence.

The Tennessee courts have long wrestled with the issue of whether psychiatric or psychological evidence is admissible to show that one is a victim of a sexual assault. The Tennessee cases on this issue relate to child sex abuse, but the principles remain the same. The court sees no difference in the evidentiary rules to be applied when the assailant and the victim are of the same sex or when it is the defendant who attempts to use this evidence rather than the State.

■ The courts of Tennessee have been extremely reluctant to allow expert testimony on whether a victim's symptoms indicate that he or she was the subject of a sexual assault. The leading case is *State v. Ballard*, 855 S.W.2d 557 (Tenn.1993). In *Ballard*, the court reversed a conviction for aggravated sexual battery upon a young child. It was found to be error to allow the State to present a psychiatrist who concluded that the victim was suffering from post-traumatic stress syndrome and that the "stressor" precipitating the syndrome was sexual abuse. The court noted that post-traumatic stress disorder can be produced by a wide variety of traumatic events, not just child sex abuse. Furthermore, "a behavioral profile that is sufficient for the purpose of psychological treatment between patient and doctor does not rise to the strict requirements necessary for admissibility in a criminal court of law." *Id.* at 562. The court further commented that "expert testimony of this type invades that province of the jury to decide on the credibility of witnesses." *Id.* at 562.[3]

In *Ballard*, the Supreme Court adopted the rationale expressed by this court in the case of *State v. Schimpf*, 782 S.W.2d 186

---

2. "Q.... What in your opinion triggered post traumatic stress syndrome in Tim Ashburn?

   A. In my opinion, what triggered the syndrome related to the diagnosis is the trauma that he experienced, which is the rape."

3. The ban on expert witnesses on credibility "prevents trials from being turned into contests between what would amount to modern oath helpers who would largely usurp the fact-finding function of judge and jury." *State v. Rimmasch*, 775 P.2d 388, 392 (Utah 1987). "The jury is the lie detector in the courtroom." *United States v. Azure*, 801 F.2d 336, 340 (8th Cir.1986).

(Tenn.Crim.App.1989). In *Schimpf*, this court reversed a conviction for child sex abuse which was based, in part, on the testimony of a physician who contended that the victim suffered from "child sex abuse syndrome" a species of post-traumatic stress disorder and that the victim was probably abused because he had symptoms of this disorder. Judge (now Justice) Adolpho A. Birch, Jr. speaking for a panel of this court observed:

> Several general principles of admissibility appear throughout our case law concerning expert testimony, and they are helpful in our subject matter analysis. They include the principles that the evidence must not invade the province of the jury; that the evidence should never be admitted unless it is clear that the jurors themselves are incapable, for want of experience or knowledge on the subject, to draw correct conclusions from the facts proved; that the evidence should neither mislead nor confuse the jury; and *most importantly, the evidence should not relate to the credibility of witnesses.*

*Id.* at 192 (emphasis added).

Our court found that the testimony in *Schimpf* should not have been admitted; the practical effect of the expert opinion was used only to buttress the credibility of the victim. This court concluded that the probative value of the expert testimony was "substantially outweighed by the danger that it unfairly prejudiced, confused, or misled the jury." *Id.* at 195. Several recent cases of this court have continued to reiterate these principles. *See State v. Anderson,* 880 S.W.2d 720 (Tenn.Crim.App.1994) and *State v. Edward H. Jones,* No. 03C01–9301–CR–00024, unreported [1994 WL 529397] (Tenn. Crim.App. Sept. 15, 1994).

Tennessee case law thus, is not supportive of the use of the symptoms of post-traumatic stress disorder to prove that a child was the victim of a sexual assault. These same principles should be applied to an adult claiming

to be the victim of a sexual assault, even if the assailant was a person of the same sex.

The post-traumatic stress disorder resulting from sexual assault of an adult is often called "rape trauma syndrome." [4] One of the leading cases on rape trauma syndrome is *State v. Black,* 109 Wash.2d 336, 745 P.2d 12 (1987). In *Black*, the adult female victim contended that the defendant raped her in a garage. There were no witnesses. In order to corroborate that victim's testimony, the State presented expert testimony that the victim subsequently manifested symptoms of rape trauma syndrome and therefore had been raped. The Supreme Court of Washington held that the evidence was inadmissible:

> Because the symptoms associated with "rape trauma syndrome" embrace such a broad spectrum of human behavior, the syndrome provides a highly questionable means of identifying victims of rape. Indeed, the American Psychiatric Association indicates that the stress and trauma associated with rape is merely one type of a larger phenomenon known as "post-traumatic stress disorder."

*Id.* at 16. The court then noted that post-traumatic stress disorder can be caused by a number of traumatic events, rape being only one of them. The court concluded that the so called "rape trauma syndrome" was not a scientifically reliable method admissible in evidence and probative of the issue of whether an alleged victim was raped. *Id.* at 18. The court observed that to allow this type of testimony carries with it an implication that the alleged victim of sexual assault is telling the truth and was in fact raped. *Id.* at 19. The decision and rationale in the Washington case is consistent with the decisions of a number of our sister states that reject expert testimony on the rape trauma syndrome. *See e.g. State v. Taylor,* 663 S.W.2d 235 (Mo.1984), *People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (Cal.1984) and *State v. Saldana,* 324 N.W.2d 227 (Minn. 1982).[5]

---

4. *See Spencer v. General Electric,* 688 F.Supp. 1072, 1075 n. 8 (E.D.Va.1988) ("Rape trauma syndrome is post-traumatic stress disorder precipitated by rape").

5. *See generally,* Annotation, *Experts—Rape Trauma Syndrome,* 42 A.L.R. 4th 879 (1985). There is contrary authority, but these cases are all inconsistent with the approach taken by *Ballard*

Several other cases have discussed the use of expert testimony on "post-traumatic stress disorder" or "rape trauma syndrome" to prove that a rape occurred either in a civil case or by a criminal defendant.

In *Spencer v. General Electric*, 688 F.Supp. 1072 (E.D.Va.1988) an alleged rape victim brought a tort claim for battery as well as a sexual harassment claim against her former supervisor and employer. She wished to introduce expert testimony that she suffered from post-traumatic stress disorder in order to prove that the rape had occurred. The District Court discussed at length the use of this type of evidence, but with citation to cases such as *State v. Black, supra*, the court concluded that this type of evidence was not "a scientifically reliable means of proving that a rape occurred." 688 F.2d at 1075. The court then found that the expert witness "sought to perform the jury's function of determining the credibility of the witnesses and the truth of the testimony. This is not traditional medicine, psychiatry, or science; it is traditional jury fact finding. To permit [the expert] to testify on whether in his opinion a rape occurred usurps the jury's prerogative and would result in simply pitting one expert against another on the issue of the witnesses' credibility and the truth of disputed facts." *Id.* at 1076–77.

In *State v. Jones*, 615 N.E.2d 713 (Ohio App.1992), the court was faced with a defendant's request to use expert testimony on rape trauma syndrome. The defendant was charged with rape of an adult woman. At trial, the woman testified and described symptoms she had subsequent to the rape. The defendant contended that these symptoms were inconsistent with rape trauma syndrome and therefore, he should be allowed to describe the rape trauma syndrome in order to contrast this with the victim's behavior. The trial court excluded the expert testimony. The appellate court affirmed. The court held that the trial judge did not abuse his discretion in determining that this evidence would mislead or confuse the jury. The court further found that the syndrome was not scientifically reliable in that some victims exhibit few if any of the symptoms while others exhibit symptoms during vastly different time frames. The court pointed out that "whether a person develops RTS and the severity of its symptoms depend on a variety of factors that have nothing to do with determining whether the victim was raped." *Id.* at 732.

Still a second case illustrates the attempt of a defendant to use expert testimony to show that she was the victim of a rape. In *DeLuca v. Lord*, 858 F.Supp. 1330 (SDNY, 1994) a female defendant having been convicted of second degree murder in state court sought federal habeas corpus relief. The petitioner's defense at the state court trial was that she had killed the victim during an incident in which the victim had assaulted and raped her. During the state court trial, she had attempted to present an expert witness to show that she suffered from post-traumatic stress disorder or rape trauma syndrome in order to corroborate her story that she had been the victim of rape. On a petition for writ of habeas corpus the court could not consider a violation of state evidentiary rules but the court could consider whether the exclusion of this witness denied the petitioner her right, under the Sixth Amendment, to call witnesses in her defense. The court concluded that there was no Sixth Amendment violation when the testimony was of dubious value and when it was "offered for the very limited purpose of supporting credibility." *Id.* at 1363.

The court is of the opinion that the trial judge did not abuse his discretion in excluding the testimony of the expert witness.

■ The proffered testimony in this case is also inconsistent with the rules governing character evidence on credibility. The testimony of the expert witness did not relate to "character for truthfulness" but rather related to the defendant's truthfulness on a particular occasion. T.R.E. 608(a) does not allow such evidence. *See* Cohen, Paine and Sheppeard, *Tennessee Law of Evidence* § 608.2 (1990).

■ The appellant contends the trial court erred in permitting the State's witness,

and *Schimpf. See, e.g., State v. McQuillen*, 689 P.2d 822 (Kan.1984).

Trooper Charles David Laxton, to testify that in 1988, the defendant was present in the east bound rest area on I–40 in Roane County and was in possession of a gun and handcuffs.[6] Since the appellant failed to specifically raise this issue in his motion for new trial, the issue is waived pursuant to T.R.A.P. 3(e), which provides in part:

"Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was *specifically stated* in a motion for new trial; otherwise such issues will be treated as waived." (Emphasis added).

Tennessee courts have held that the grounds for relief set out in a motion for new trial must be as specific and certain as the nature of the error will permit. *See State v. King,* 622 S.W.2d 77, 79 (Tenn.Crim.App. 1981). For instance, if the error concerns admission or rejection of evidence, the evidence admitted or rejected should be stated. *See* Raybin, *Tennessee Criminal Practice and Procedure* § 33.61 (1985).

■ The purpose of the specificity requirement is to advise the trial court and opposing counsel of the alleged error and to enable the appellate courts to determine that the error was presented to the trial court for correction. In this case, the appellant failed to allege in his motion for new trial that the trial court erred in permitting testimony concerning the gun and handcuffs of which he now complains.

■ The appellant also contends that the trial court erred in allowing testimony concerning the 1988 confiscation of defendant's expired drivers license. The drivers license became an issue in the trial because the state trooper used this confiscated drivers license in a photographic array shown in the identification of the defendant. All six (6) photo-

graphs in the photographic array were drivers license photographs.

In a pre-trial hearing, the state trooper testified that an adult male reported being assaulted along the interstate highway in 1988. The next night the state trooper questioned the defendant at a rest stop area. This was the night that the state trooper observed the pistol and the handcuffs in the defendant's vehicle. During the conversation with the state trooper in 1988 the defendant showed the trooper two drivers licenses. One was expired and one was valid. The state trooper confiscated the expired license. The trooper testified that he felt that he did not have enough evidence to charge the defendant in 1988, but he kept the expired license.

As relates to the 1988 incident, the specific defense objection was "I move in limine not to have any evidence concerning the '88 charge." The trial court commented that "the method in which he got the license and where that was, all that would be admissible, as long as it doesn't refer to any other alleged crimes or incidents." The court ultimately held that "[the state] can't talk about the other charges and of course can't say they suspected him of something else. But they can, of course, introduce proof of when and where they obtained the license." The defendant did not object to this ruling.

Now on appeal the defense argues that the introduction of the time frame of the 1988 confiscation of the drivers license creates an "unquestioned aura" of ongoing suspicion of the defendant.

In testifying before the jury, the state trooper told of the confiscation of the drivers license in 1988. He did not mention the 1988 assault incident.

Here again, the appellant's allegation of error in the motion for new trial is problematic. As relates to this issue the motion states:

The court erred in allowing the State to introduce evidence of the date of the preparation of the photographic array (1988) and the circumstances surrounding the preparation of this photographic array.

---

6. As previously mentioned, the state trooper had also testified, without objection, that on another occasion he found the defendant in possession of "male pornographic magazines."

This assignment of error is not only confusing, but it is non-specific. At trial, defense counsel objected to Trooper Laxton's testimony regarding finding handcuffs and a starter pistol in the defendant's car during the 1988 stop. At the hearing on the motion for new trial, defense counsel did not argue and stated that he would "simply stand on the record." Therefore, there is nothing from which to glean the basis of the defendant's allegation of error and the issue is waived. *See King,* 622 S.W.2d at 79.

Finally, the appellant complains the trial court erred in overruling defense counsel's objections to portions of the prosecutor's closing argument. Appellant argues that the prosecutor improperly played upon the jurors' fears of violent attack and injected personal opinion as to the defendant's guilt.

■ In order to prevail on this issue, the appellant must not only show the argument was improper, but also must establish the alleged error prejudiced the appellant at trial. The test for establishing prejudicial error is whether the jury could consider the defendant's case with impartiality despite the alleged improper remark by the prosecutor. *Judge v. State,* 539 S.W.2d 340, 344 (Tenn. Crim.App.1976).[7] The appellant complains of three (3) specific remarks. First, the district attorney general argued as follows:

I take it that just like [the victim], you will be very cautious from now on when you stop at a rest area or parking area on the interstate highways of this state or this country. Up until now perhaps you were not aware of some of the things that happen to people at these areas. MR. ELDRIDGE: Your Honor, I'm going to object to that line of argument. That's inappropriate. THE COURT: Overruled.

This comment on the dangerousness of rest areas was not proper as it was not relevant to the issue before the jury. The remark, however, could not have affected the verdict and was harmless error.

■ Secondly, the district attorney general argued:

I hope that none of you all are ever in this situation. But put yourself as close to

there as you can in the shoes of [the victim] and visualize what he was going through during this time period. MR. ELDRIDGE: Your Honor, I'm going to have to object, I think that's improper argument to ask the jury to do that. THE COURT: Overruled. Go ahead.

This remark, suggesting that the jurors put themselves in the shoes of the victim was improper. *See Lycans v. Commonwealth,* 562 S.W.2d 303, 305–06 (Ky.1978). The court finds, however, that allowing this argument was harmless and could not have affected the verdict.

■ Finally, the appellant complains about the following comment made by the prosecutor:

I'm not embarrassed by the fact that the defendant might have to serve some time in jail. And I hope that you aren't. I hope that you feel that someone who would do this ought to serve some time in jail. MR. ELDRIDGE: Your Honor, I must rise on that one. I would ask the Court to ask Mr. Delp not to interject his personal feelings into what his argument is. I suggest it is inappropriate. ASSISTANT GENERAL DELP: Your Honor, I have simply responded to—THE COURT: If you hadn't brought it up I wouldn't let him do it in exactly that way. But since you did, you can't complain.

■ The trial court determined that the prosecutor's argument in this instance was in response to argument by defense counsel. Argument that might otherwise be held improper does not constitute error where it is in response to the argument of the defendant. *State v. Sutton,* 562 S.W.2d 820 (Tenn. 1978). Since the defense argument is not included in the record on appeal, this court must presume that the determination by the trial court was correct.

The judgment of the trial court is affirmed.

JONES and TIPTON, JJ., concur.

---

**7.** Cases are reversed only when the improper argument "so infected the trial with unfairness as to make the resulting conviction a denial of

due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). *See also,* Raybin, *supra* at § 29.61.