NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

WAYNE EUGENE HARDY, *Appellant.*

No. 1 CA-CR 18-0328
FILED 6-4-2019

Appeal from the Superior Court in Mohave County
No. S8015CR201700177
The Honorable Richard Weiss, Judge (retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Legal Advocate Attorney, Kingman
By Jill L. Evans
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Michael J. Brown joined.

**P E R K I N S**, Judge:

**¶1** Wayne Hardy appeals his conviction and sentence for unlawful administration of a dangerous drug, a class 6 felony. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**¶2** We view the facts and all reasonable inferences therefrom in the light most favorable to upholding the verdict. *State v. Causbie*, 241 Ariz. 173, 175, ¶ 2 (App. 2016) (citing *State v. Inzunza*, 234 Ariz. 78, 80–81, ¶ 2 (App. 2014)).

**¶3** On December 3, 2014, Hardy arranged to meet Victim, a friend of his, at a bar and social club near Lake Havasu. When Victim arrived, Hardy had already ordered her a drink. Surveillance footage showed Hardy stirred Victim's drink before she arrived. Victim drank a portion of the drink and began to feel unwell, so she had a friend bring her some food. Victim, who later testified she still felt dizzy even after eating, stayed at the bar with Hardy and had more to drink that evening.

**¶4** Victim and Hardy left the bar together but drove separately to Hardy's home so Victim could pick up some DVDs that belonged to her. Once inside Hardy's home, Hardy offered Victim a drink, which she at first refused, but eventually accepted. After sipping her drink, Victim felt worse. As she tried to leave, Hardy put two pills in her mouth, telling her they would make her feel better. Victim removed the pills from her mouth and placed them in her pocket. Victim testified she then began to fade in and out of consciousness but was able to recall finding herself on Hardy's bed. Victim testified that she felt "paralyzed," fading in and out of consciousness while Hardy removed her clothing. Eventually, Victim regained consciousness to find herself completely naked on Hardy's bed with Hardy lying naked behind her.

**¶5** Victim left Hardy's home and drove to her own residence while Hardy followed in another vehicle. The next day, Victim reported the incident to police and underwent a sexual assault examination, including a

urinalysis, which revealed the presence of a prescription sleep aid for which Victim did not have a prescription. Victim also gave the police the two pills Hardy had given her the night before, which tested positive for the same prescription sleep aid. In Hardy's home, police found a pill bottle containing the prescription sleep aid, in Hardy's name, in his master bathroom.

¶6　　　　　The State charged Hardy with unlawfully administering a dangerous drug, a class 6 felony, in violation of Arizona Revised Statutes ("A.R.S.") section 13-1205. Pursuant to A.R.S. § 13-118, the State later amended the indictment to allege that Hardy committed the act with sexual motivation. Prior to trial, the State filed a motion seeking admission of other-act evidence under Arizona Rule of Evidence ("Rule") 404(b). The evidence in question was the testimony of two women, J.C. and H.L., that Hardy had, on two other occasions, served them drugged drinks while they were in his home, causing both to black out. Like Victim, both woke up on Hardy's bed. In support of its motion, the State attached twenty pages of transcripts of police interviews with the other two women. Hardy filed a motion to preclude the evidence. After considering argument but without hearing either of the women testify, the court ruled that the women's testimony was admissible under Rule 404(b) and not unduly prejudicial under Rule 403.

¶7　　　　　At trial, J.C. testified that she knew Hardy from a social club and bar in Wickenburg. J.C., who sometimes sold home cleaning products, went to Hardy's home to demonstrate the products. At his home, Hardy gave J.C. a beer and a shot of liquor from his refrigerator. Two hours later, J.C. awoke in Hardy's bed, wearing only her bra and shorts, with no memory of how she got there. J.C. testified that she grabbed her clothing and ran out of Hardy's house and never reported the incident to authorities. The second woman, H.L., testified that she had known Hardy socially for almost nine years before her incident with him. H.L. testified that she went to Hardy's house to have a drink with him and, when she arrived, he had already poured her drink. After taking a sip from the drink, H.L. began to feel lightheaded and "wobbly," at which point Hardy helped her to his bedroom. H.L. asked Hardy why she felt unwell after just one drink and Hardy responded that she had consumed fourteen drinks, which H.L. denied. H.L. could not remember anything after that, until she woke up on Hardy's bed, nude, five hours later.

¶8　　　　　The jury convicted Hardy as charged and the court sentenced him to 10 months' incarceration. Hardy now appeals.

**DISCUSSION**

**¶9** On appeal, Hardy argues the trial court erred in admitting the evidence regarding other occasions in which women found themselves waking up in Hardy's bed, apparently drugged after drinking beverages he prepared for them. Evidence of other acts "is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b). Such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Rule 404(b)'s list of "other purposes" is not exhaustive, and evidence that is relevant "for any purpose other than that of showing the defendant's criminal propensities . . . is admissible even though it refers to his [other] acts." *State v. Jeffers*, 135 Ariz. 404, 417 (1983) (citations omitted). "When the State seeks to admit evidence of other acts of the defendant, it must prove by clear and convincing evidence that the defendant committed the other acts" and the acts "must be offered for a proper purpose." *State v. Hausner*, 230 Ariz. 60, 79, ¶ 69 (2012) (citing *State v. Terrazas*, 189 Ariz. 580, 583 (1997)). Moreover, the other acts "must be relevant" and "their probative value must not be substantially outweighed by the danger of unfair prejudice." *Id.* (citing *Terrazas*, 189 Ariz. at 583). We review the admission of other-act evidence for abuse of discretion. *State v. Villalobos*, 225 Ariz. 74, 80, ¶ 18 (2010) (citation omitted).

**I.      Clear and Convincing Evidence of the Other Acts**

**¶10** Hardy argues that there was "no credible evidence that [he] drugged the other two women" because there was no physical evidence of the other incidents and the women had "significant credibility problems." Before allowing other-act evidence under Rule 404(b), the trial court "must find that there is clear and convincing proof both as to the commission of the other bad act and that the defendant committed the act." *Terrazas*, 189 Ariz. at 584. Here, the State offered detailed police interviews of the two other-act women. These interviews contained sufficient evidence to support the trial court's finding that the other acts, and Hardy's commission of those acts, were supported by clear and convincing evidence. *See State v. Vega*, 228 Ariz. 24, 29, ¶ 19 (App. 2011) (citation omitted). Thus, the trial court did not err in finding the other acts were supported by clear and convincing evidence.

**II.     Proper Purpose Under Rule 404(b)**

**¶11** Hardy next argues that the other-act evidence was admitted for an improper purpose because intent was not sufficiently at issue in this case. Intent, however, is not the only purpose for which other-act evidence

may be admitted. *See* Ariz. R. Evid. 404(b). Hardy was charged with one count of unlawfully administering a dangerous drug committed with sexual motivation. At trial, Hardy's counsel conceded in his opening statement that the drug in question was in Hardy's apartment and that Victim tested positive for the drug the day after the incident but argued that Hardy had no need to drug Victim because the two were on a date and engaged in consensual sexual contact. In light of these arguments, Hardy's other conduct was highly probative to show a "common plan or scheme." *See State v. Huey*, 145 Ariz. 59, 61–62 (1985) (approving the use of other-act evidence to demonstrate criminal intent). In *Huey*, a defendant charged with various crimes related to his kidnapping and assault of a woman argued that other-act evidence was admitted for an improper purpose. *Id.* at 61. Our supreme court held that because the defendant argued the woman had consented to his conduct, the other occasions on which the defendant had "kidnap[ped] women against their will and then degrad[ed] and control[ed]them through sexual abuse . . . was similar in so many significant aspects that it could be reasonably inferred that the motive was the same for both incidents." *Id.*

¶12        Additionally, the accounts given by J.C. and H.L. were significantly similar to Victim's experience. *See State v. Scott*, 243 Ariz. 183, 187–88, ¶¶ 15–16 (App. 2017) (affirming the admission of evidence of an act "strikingly similar in character to the current crime" where a proper Rule 404(b) purpose was implicated); *see also State v. Van Adams*, 194 Ariz. 408, 415–16, ¶ 21 (1999) (upholding the admission of other-act evidence under Rule 404(b) based in part on the "[n]umerous similarities" between the other acts alleged and the incident giving rise to the charged offense). Thus, the court did not err in admitting the challenged testimony. Moreover, the jury was appropriately instructed to consider the other-act testimony only for the purposes authorized by Rule 404(b) and not for the purpose of establishing Hardy's character or propensity to commit criminal acts.

## III.    Undue Prejudice

¶13        Finally, Hardy argues the other-act evidence was more prejudicial than probative and therefore barred by Rule 403. Prejudicial evidence is not barred by Rule 403 when its prejudicial nature arises solely from its relevance and materiality. *Scott*, 243 Ariz. at 188, ¶ 17 (citing *State v. Schurz*, 176 Ariz. 46, 52 (1993)). Here, Hardy testified at trial that after he and Victim arrived at his home, he gave Victim some non-prescription pain reliever and that Victim had gone into his bathroom. Then, according to Hardy, Victim emerged from the bathroom with a "funny look on her face," handed him her underwear without a word, and went to his bedroom. Hardy further testified that he and Victim engaged in consensual sexual

relations, during which he, Hardy, passed out at some point and woke up to Victim performing a sex act on him. Essentially, Hardy testified that Victim had consented to taking medication and had consented to subsequent sexual relations. Thus, the State's introduction of other-act evidence, while necessarily adverse to Hardy's defense, was not so prejudicial that it was barred by Rule 403 simply because it was relevant and material to showing Hardy had unlawfully administered a dangerous drug to Victim. The evidence served to help rebut Hardy's contention that Victim voluntarily took his sleeping pills before voluntarily engaging in sexual activity with him. The trial court did not abuse its discretion in ruling that the other-act evidence was admissible over Hardy's Rule 403 challenge.

## CONCLUSION

¶14        For the foregoing reasons, we affirm Hardy's conviction and sentence.

