# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## DECEMBER SESSION, 1996

| | | |
|---|---|---|
| **WILLIE D. LOCUST,** | ) | **C.C.A. NO. 02C01-9512-CC-00356** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | **DYER COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JOE G. RILEY** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | **(Post-Conviction Relief)** |

**FILED**

July 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

FOR THE APPELLANT:

LANCE E. WEBB
P. O. Box 26
Union City, TN  38061

FOR THE APPELLEE:

CHARLES W. BURSON
Attorney General and Reporter

ROBIN L. HARRIS
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

PHILLIP BIVENS
District Attorney General

KAREN WINCHESTER
Assistant District Attorney
P. O. Box E
Dyersburg, TN  38024

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

Appellant Willie D. Locust appeals from the dismissal of his petition for post-conviction relief. On September 28, 1993, a jury found Appellant guilty of one count of aggravated rape and one count of aggravated burglary. As a Range I standard offender, Appellant received concurrent sentences of twenty years imprisonment for aggravated rape and four years imprisonment for aggravated burglary. On October 5, 1994, this Court affirmed the convictions and the sentences of the trial court. See State v. Locust, No. 02-C-01-9404-CC-00075, 1994 WL 536187, at *2 (Tenn. Crim. App. Oct. 5, 1994), perm. app. denied, (Tenn. Jan 3, 1995). On March 14, 1995, Appellant filed a pro se petition for post-conviction relief, alleging ineffective assistance of counsel and prosecutorial misconduct. After appointment of counsel and an evidentiary hearing, the trial judge dismissed the petition. In this appeal of that decision, Appellant alleges that his pre-trial counsel and his trial counsel were ineffective and that the indictment against him was defective.

For the reasons stated below, we affirm the decision of the post-conviction court.

**Factual Background**

On April 30, 1993, Bobbie Evans and several friends went to a bar to have some drinks. She and her friends were given a ride home by a man named William Birmingham. Mr. Birmingham accompanied Ms. Evans back to her apartment and stayed until approximately 4:45 a.m. After Mr. Birmingham left, Ms. Evans fell asleep on her couch but was awakened by Appellant. He was naked and standing over her holding a knife. Appellant threatened to kill her if she resisted. He then raped her once on the couch and once in the bedroom. Ms. Evans received several

cuts and bruises in the process. After these attacks, Appellant ordered her to make him a sandwich and then gave her his name and phone number before he left. Thirty minutes later, Ms. Evans went to a neighbor's house and reported the incident.

Appellant admitted to having sex with Ms. Evans but claimed that it was consensual. He testified that she called to him from her balcony when he was outside her apartment. According to Appellant's version of the events, Ms. Evans asked him to find some marijuana for her and in return she would sleep with him.

## I. Ineffective Assistance of Counsel

Appellant alleges that pre-trial counsel's representation was deficient because he joined the staff of the district attorney general. Appellant further alleges that trial counsel's representation was deficient because counsel failed: (1) to raise and preserve for appellate review the allegation that Mr. Birmingham had sexual relations with the victim prior to Appellant's attack; (2) to adequately cross-examine the victim; (3) to raise important issues on appeal and to explain to Appellant his pro se briefing rights; (4) to object to inflammatory statements made by the prosecutor during closing; and (5) to secure a deoxyribonucleic acid (DNA) comparison of the semen found in the victim with a blood sample from Appellant.

When an appeal challenges the Sixth Amendment right to effective assistance of counsel, the appellant has the burden of establishing that the advice given or services rendered by the attorney fell below the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). Under Strickland v. Washington, 466 U.S. 668, 687 (1984), there is a two-prong test which places the burden on the appellant to show that (1) the representation was deficient, requiring a showing that counsel made errors so

serious that he or she was not functioning as "counsel" as guaranteed a defendant by the Sixth Amendment, and (2) the deficient representation prejudiced the defense to the point of depriving the appellant of a fair trial with a reliable result. Prejudice is shown by demonstrating a reasonable probability that, but for counsel's unprofessional errors,  the result of the proceeding would have been different.  Id. at 694.  Under the Strickland test, a reviewing court's scrutiny "must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ."  Id. at 689.  In fact, a petitioner challenging his counsel's representation faces a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."  Id. at 689.

Before addressing the substance of Appellant's claim of ineffective assistance of counsel, we recognize that our scope of review is limited.  In a petition for post-conviction relief, the petitioner must establish his or her allegations by a preponderance of the evidence.  McBee v. State, 655 S.W.2d 191, 195 (Tenn. Crim. App. 1983) (citing Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978)).  Furthermore, the findings of fact made by a trial judge in post-conviction hearings are conclusive on appeal unless the appellate court finds that the evidence preponderates against the judgment.  Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990).

### A. Pre-Trial Counsel's Employment by the District Attorney General

Appellant's first attorney joined the staff of the district attorney general after he had represented Appellant at the preliminary hearing.  Of course it is firmly established, "both in the Canons of Professional Ethics and by judicial opinions, that attorneys cannot represent conflicting interests or undertake to discharge inconsistent duties."  State v. Phillips, 672 S.W.2d 427, 430 (Tenn. Crim. App.

1984).  However, before leaving the public defender's office, pre-trial counsel informed Appellant that he would no longer be representing Appellant and that someone else in the public defender's office would be representing him.  Upon joining the district attorney general's office, pre-trial counsel had absolutely no involvement with Appellant's case.  In fact, Appellant does not even allege that any confidential information was passed or that any other impropriety occurred.  Under the circumstances, Appellant has failed to demonstrate deficient performance or any prejudice with respect to this ground.

### B. Alleged Prior Sexual Relations of the Victim

Appellant alleges that trial counsel's performance was deficient because he failed to raise the question of the victim's alleged consensual sexual relations with Mr. Birmingham the morning of the attack on the victim.  Appellant seems to be arguing that if the victim consented to having sexual relations with one man she must have consented to sexual relations with Appellant.  Appellant claims that this evidence was admissible to prove consent pursuant to Tennessee Rule of Evidence 412(c)(4)(iii), which provides that evidence of specific instances of sexual conduct with persons other than the accused are admissible if:

> the evidence is of a pattern of sexual behavior so distinctive and so closely resembling the accused's version of the alleged encounter with the victim that it tends to prove that the victim consented to the act charged or behaved in such a manner as to lead the defendant to reasonably believe that the victim consented.

The victim's alleged sexual relations with Mr. Birmingham show absolutely no resemblance to Appellant's version of the encounter.  The victim and Mr. Birmingham had dated for years and were once engaged to be married.  On the night in question, they had discussed renewing their relationship.  Appellant claims the victim offered sex in exchange for drugs.  Under the circumstances, any sexual involvement with Mr. Birmingham was inadmissible at trial.  Thus, Appellant has

failed to demonstrate any deficient performance on the part of counsel or any prejudice to his defense.

## C. Cross-Examination of the Victim

Appellant next alleges that trial counsel was ineffective in his cross-examination of the victim. Appellant argues that trial counsel failed to question the victim about certain inconsistencies between police reports and her trial testimony. After the victim was raped, she went to her neighbor's house to tell her what had happened. Her neighbor called the police and reported the incident. In the police report, the neighbor is quoted as saying that the victim was raped by an unknown assailant. In the incident report, the victim stated that the assailant forced her to have sex with him, ordered her to make him a sandwich, and then forced her to have sex again. In her trial testimony, the victim claimed that her assailant forced her to have sex twice and then ordered her to make a sandwich. The first inconsistency to which Appellant points is a statement made by the victim's neighbor and not the victim herself. In addition, the victim testified at trial that she had never seen or spoken to Appellant before the night of the rape. The second alleged inconsistency carries no importance. Certainly, a variance in the order in which Appellant ordered the victim to have sex and to fix a sandwich would not destroy her testimony. Finally, from the record it appears that trial counsel conducted an exacting cross-examination, asking the victim about several inconsistencies between her trial testimony and her preliminary hearing testimony. Even assuming that counsel's cross-examination was deficient, Appellant has failed to show how the result of the trial would have been different absent the alleged deficiency.

## D. Issues on Appeal

Appellant further alleges that trial counsel failed to preserve and brief important issues on appeal. Appellant also faults trial counsel for not informing him

of his pro se briefing rights. The only issue not raised on direct appeal, that Appellant claims should have been, concerns is the admissibility of the victim's prior sexual relations with Mr. Birmingham. We have already found that this evidence was inadmissible; therefore, Appellant's contention is without merit. As for Appellant's pro se briefing rights, it is well established that a criminal defendant cannot be represented by counsel and simultaneously proceed pro se. See, State v. Burkhart, 541 S.W.2d 365, 371 (Tenn. 1976). Because Appellant was proceeding with counsel on appeal he had no right to file a pro se brief. Appellant has thus failed to demonstrate any prejudice with respect to this issue.

### E. Prosecutor's Closing Argument

Appellant also alleges that trial counsel erred in failing to object to inflammatory remarks made by the prosecution. During closing argument, the prosecutor stated that rape cases were "not ever going to be as clear as you would like, but that they're as clear as they get in real life situations." He further stated, "And that's what you have here. And you could well be involved in one of these situations yourself. This lady didn't invite this. Thank you." The prosecutor also made the following statement about Appellant: "But we're not accusing him of being smart. We're accusing him of being dangerous."

The general test to be applied to alleged prosecutorial misconduct during final argument is "whether the improper conduct could have affected the verdict to the prejudice of the defendant." Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965). In making that determination, we take into account the following factors:

> 1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.
> 2. The curative measures undertaken by the court and the prosecution.
> 3. The intent of the prosecutor in making the improper statement.

> 4. The cumulative effect of the improper conduct and any other errors in the record.
>
> 5. The relative strength or weakness of the case.

Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

There is no doubt that the comment made by the prosecutor during closing argument that "you could well be involved in a situation like this yourself" was improper. However, it seems that the prosecutor was trying to explain how difficult it is to prove the absence of consent in many rape cases where the only witnesses are the victim and the accused. The prosecutor's comment in this case is very similar to that found in State v. Ashburn, were the prosecutor stated that "I hope that none of you all are ever in this situation." 914 S.W.2d 108, 115 (Tenn. Crim. App. 1995). In Ashburn, this Court found that although the prosecutor's comment was improper, it was harmless. Likewise, we find that the prosecutor's comment, under the circumstances of this case, was harmless. Thus, no prejudice has been demonstrated from counsel's failure to object.

The prosecutor's comment that the State was not accusing Appellant of being smart but was accusing him of being dangerous was made in response to defense counsel's closing argument. In his closing, Appellant's trial counsel argued that it was very strange that Appellant had given his name and telephone number to the victim before he left. He argued that a rapist would not have done such a thing. The prosecutor's comment during rebuttal was a fair response to the line of argument that an intelligent individual would not have behaved as it was alleged Appellant behaved.

**F. DNA Testing**

Finally, Appellant claims that trial counsel was ineffective in failing to obtain a DNA analysis from the rape kit performed on the victim. At trial, Appellant admitted to having sex with the victim but claimed that it was consensual. Appellant believes that the DNA analysis would prove that Mr. Birmingham had sex with the victim hours before the rape. As stated supra, any sexual involvement with Mr. Birmingham was inadmissible at Appellant's trial, thus a failure to obtain a DNA analysis could not have prejudiced Appellant.

## II. Sufficiency of the Indictment

Appellant next contends that because the indictment fails to state the requisite mens rea for the crime of aggravated rape, the instrument is fatally defective. He relies upon State v. Hill, No. 01C01-9508-CC-00267, 1996 WL 346941, at *3 (Tenn. Crim. App. June 20, 1996), perm. app. granted, (Tenn. Jan. 6, 1997). In Hill, this Court held that the failure to allege the mens rea or culpable mental state in a prosecution for aggravated rape rendered the indictment fatally defective.

After Hill was decided, a panel of this Court held that if the statute under which a defendant is prosecuted does not allege a specific mens rea, failure to allege a culpable mental state in the indictment does not invalidate the indictment. State v. Dison, No. 03C01-9602-CC-00051, 1997 WL 36844 (Tenn. Crim. App. Jan. 31, 1997). As this Court said in Dison,

> When the legislature neglects to include the requisite mental state in the definition of an offense, permitting the application of any one of three mental states set forth in Tenn. Code Ann. § 39-11-301(c), an allegation of criminal conduct will provide the accused constitutionally adequate notice of the facts constituting the offense.

Id. at *9.

Both the Tennessee Constitution and the United States Constitution require fair and reasonable notice of the charges against a defendant. See U.S. Const. amend. VI;

Tenn. Const. art. I, § 9. In Tennessee, an indictment serves to (1) inform the defendant of the precise charges, (2) enable the trial court upon conviction to enter an appropriate judgment and sentence, and (3) protect the defendant against double jeopardy. State v. Trusty, 919 S.W.2d 305, 309 (Tenn. 1996). The facts must be stated in ordinary and concise language so that a person of "common understanding" will know what is intended. Warden v. State, 381 S.W.2d 244, 245 (Tenn. 1964).

In this case, the indictment alleged that Appellant unlawfully and with force or coercion sexually penetrated the victim while armed with a weapon in violation of Tennessee Code Annotated Section 39-13-502. The legislature has failed to provide for any specific mens rea under Section 39-13-502. Therefore, under Dison, the indictment is not fatally defective since it alleged criminal conduct sufficiently to give Appellant notice of the charges against him. Moreover, the indictment informed Appellant of the precise charge against him and used ordinary and concise language so that a person of common understanding would know what was intended. The trial court was able to enter the appropriate judgment and sentence, and the allegations protected Appellant against any subsequent prosecution for the same offense. Appellant is not entitled to relief on this issue.

We conclude that Appellant was not denied effective assistance of counsel nor was the indictment defective. The judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____

-10-

JOE B. JONES, PRESIDING JUDGE

_____
JOSEPH M. TIPTON, JUDGE