# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT NASHVILLE

March 20, 2019 Session

## STATE OF TENNESSEE v. GREGORY RANDALL SOUTH

### Appeal from the Criminal Court for Fentress County
No. 2017-CR-50     E. Shayne Sexton, Judge

_____

### No. M2018-01360-CCA-R3-CD

_____

Following a jury trial, the defendant, Gregory Randall South, was convicted of two counts of selling morphine, a Schedule II controlled substance. On appeal, the defendant contends the prosecutor improperly commented on his right not to testify and used an improper hypothetical during closing argument. Having thoroughly reviewed the record, we conclude the prosecutor's comments on the defendant's right not to testify constitute reversible non-structural constitutional error. Accordingly, we reverse the judgments of the trial court and remand the matter for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed; Case Remanded**

J. ROSS DYER, J., delivered the opinion of the court. NORMA MCGEE OGLE, J., filed a concurring opinion, in which ROBERT W. WEDEMEYER, J., joined.

Emily E. Wright, Jamestown, Tennessee, for the appellant, Gregory Randall South.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Jared R. Effler, District Attorney General; and Philip Kazee, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

This case arises from the defendant's involvement in controlled buys conducted by the Fentress County Sheriff's Department on September 19 and September 20, 2016.

The defendant was indicted with two counts of selling morphine, a Schedule II controlled substance, and two counts of delivering morphine. The following evidence was presented at trial.

In June of 2016, the Fentress County Sheriff's Department began working with confidential informant Debbie Lee on several controlled drug transactions. Ms. Lee was paid for each controlled buy and received $200 for two transactions occurring on September 19 and 20, 2016, and additional payments for other unrelated transactions. Ms. Lee agreed to be a confidential informant because she was a recovering drug addict and wanted to help rid Fentress County of drug trafficking. Although Ms. Lee was on unsupervised probation at the time of the controlled buys, she denied receiving a reduction in her sentence for her work as a confidential informant.

On September 19, 2016, Ms. Lee's girlfriend called the defendant and asked to purchase two sixty-milligram morphine tablets. Once Ms. Lee confirmed the narcotics were available, she met Detective Brian Franklin and Detective Lance Stephens, both narcotics detectives with the Fentress County Sheriff's Department, in preparation for the transaction. Because he did not want to "get[] physical [with] a lady," Detective Stephens searched Ms. Lee by asking her to pull out her pockets and shake out her shirt. He also searched Ms. Lee's vehicle for money and illegal narcotics prior to the transaction. Detective Franklin placed an electronic listening device on Ms. Lee that allowed the detectives to monitor the transaction in real time. He also gave her a cell phone, which was equipped with a video recording application. Before leaving for the defendant's home, Ms. Lee was given $80 to purchase the morphine pills.

When Ms. Lee arrived at the defendant's home, someone other than the defendant answered the door. The defendant was standing in the kitchen and laid down two morphine tablets on the kitchen island. Ms. Lee placed the $80 on the island and picked up the morphine pills. She asked the defendant if he had anything to wrap the pills in and was given a piece of cellophane. Ms. Lee then wrapped the pills in the cellophane and placed them in her bra. As Ms. Lee was leaving, the defendant told her to come back the next day because "he would have the hundred milligrams."

During the controlled buy, Detectives Franklin and Stephens parked their vehicle within eyesight of the defendant's house, and the detectives listened to the transaction through the audio equipment. The State introduced both the audio and video recordings of the transaction and played them for the jury at trial. Although there were several voices on the audio recording, Detective Stephens, who was familiar with the defendant, testified "one of the first voices [he] recognized" was the defendant's.

After the transaction, Ms. Lee travelled to a prearranged location to meet Detectives Franklin and Stephens. When she pulled into the parking lot, Ms. Lee gave Detective Franklin the pills, and Detective Franklin placed them in an evidence bag. Detective Stephens then searched Ms. Lee and her vehicle for money, weapons, and illegal narcotics.

On September 20, 2016, Ms. Lee's girlfriend set up another drug buy with the defendant, this time for a one-hundred-milligram morphine tablet. Ms. Lee again met with Detectives Franklin and Stephens in preparation for the transaction. Detective Stephens searched Ms. Lee and her vehicle, and Detective Franklin gave her $60 to purchase the morphine. He also equipped her with a recording device and cell phone.

When Ms. Lee arrived at the defendant's home, she was again let in by someone other than the defendant. The defendant was sitting on a couch in the living room and did not get up during the transaction. Ms. Lee handed the defendant $60, and he gave her the morphine pill.

As before, Detectives Franklin and Stephens parked a short distance from the defendant's house and listened to the audio of the transaction as it occurred. The audio and video recordings of this transaction were also introduced at trial. At the conclusion of the transaction, Ms. Lee met the detectives at a predetermined location. Detective Franklin took the pill from Ms. Lee and placed it in an evidence bag while Detective Stephens searched Ms. Lee and her vehicle.

Special Agent Erica Stone with the Tennessee Bureau of Investigation tested the evidence collected from the September 19 and September 20, 2016, controlled buys for the presence of narcotics. She identified the pills purchased on September 19 and September 20, 2016, as morphine. However, she was unable to verify the milligram amount of each pill because laboratory policy does not allow agents to "quantify a substance." The State entered the reports authored by Special Agent Stone into evidence.

During cross-examination, Detective Stephens admitted he was unaware Ms. Lee had convictions for theft and passing worthless checks or that she was on probation at the time of the controlled buys. In addition, Detective Franklin admitted on cross-examination that he was unaware Ms. Lee, prior to becoming a confidential informant, was incarcerated for a probation violation because she failed to pay restitution on her worthless check charges.

After the State rested, the defendant moved for acquittal. The trial court dismissed the two delivery charges but otherwise denied the motion. The defendant declined to

present evidence.  After completing deliberations, the jury found the defendant guilty of the two remaining counts.  Following a sentencing hearing, the trial court imposed an effective sentence of nine years.

The defendant filed a timely motion for new trial in which he argued, in part, the trial court erred by allowing the State to present an improper hypothetical during rebuttal closing argument and by allowing the State to improperly comment on the defendant's right not to testify.  The defendant filed an affidavit in support of his claim that the prosecutor improperly commented on his right not to testify, which described the prosecutor's voice and body language while delivering the comment.  While the trial court denied the defendant's motion for new trial, the court did express concern over the State's closing argument as it related to the defendant's right not to testify.  Specifically, the trial court noted,

> Now the third part, I'm troubled a little bit about that.  The – it's always dangerous when we get into an area where the State is daring a response from a defendant, and particularly a defendant who has not testified and offered no proof.  That's a – that is a very – first of all, it's a very clear line, you can't do that.  But it's also, you know, murky about what is a dare and what is a persuasive comment in closing.
> . . .
> I – you know, we've had these discussions either in writing or in [c]ourt numerous times about where the State can go in closing argument when a defendant has not testified or not offered proof.  It's a very dangerous proposition to get into that, but in this particular case, I find that there is no – no showing that the outcome was affected by the State's argument.

This timely appeal followed.

### *Analysis*

On appeal, the defendant argues the prosecutor made improper comments during rebuttal closing argument when he commented on the defendant's right not to testify and presented an improper hypothetical, asking the jury to put themselves in Ms. Lee's shoes.  The State contends all issues are waived because the defendant's motion for new trial lacked specificity.  The State also contends the defendant's issues failed to meet the standard for plain error review.  Upon our thorough review of the record, we agree the State improperly commented on the defendant's right not to testify and reverse the judgments of the trial court.

- 4 -

Initially, we must address the State's contention that the defendant's motion for new trial lacked specificity. We note a motion for new trial should be viewed "in the light most favorable to the appellant, and it should resolve any doubt as to whether the issue and its grounds were specifically stated in favor of preserving the issue." *Fahey v. Eldridge*, 46 S.W. 3d 138, 143 (Tenn. 2001); *State v. Danny Howard*, No. W2012-02109-CCA-R3CD, 2013 WL 6254679, at *7 (Tenn. Crim. App. Dec. 2, 2013), *perm. app. denied* (May 15, 2014). After reviewing the defendant's motion for new trial, we conclude he properly preserved the issues raised in this appeal.

## I.     Improper Hypothetical

The defendant argues the prosecutor presented an improper hypothetical during rebuttal closing argument when he asked the jurors to imagine being in Ms. Lee's position. The defendant argues this hypothetical inflamed the juror's emotions and affected the outcome of the trial. The State contends the hypothetical does not merit reversal. We agree with the State.

During rebuttal closing argument, the following exchange occurred:

[PROSECUTOR]:          And you know, I thought about this last night. I've got a daughter. Can you imagine? I don't care if you're the worse (sic) criminal in the world. Can you imagine being a female and going into a drug home? Can you imagine that?

[DEFENSE COUNSEL]: Objection, your Honor.    He's giving a hypothetical here to the jury.

[PROSECUTOR]:          That --

THE COURT:      Ladies and Gentlemen, again, this is argument. Anything that's inconsistent with the proof you're to disregard, however, I will permit that -- this argument to continue.

[PROSECUTOR]:          Thank you, your Honor. This is proof. She's a -- she's an individual in a vehicle. She's a female. She's going in a home of a male drug dealer in Fentress County, Tennessee. She's got audio on she testifies to. She's got video on. She's carrying a phone around. And she's trying to get anything she can get, and she's by herself. She doesn't have a gun. She doesn't have a weapon. She doesn't know who's in that house. She doesn't know what weapons he may have. She's got a video,

- 5 -

and she's trying to get anything she can to just document that she's telling the truth for once in her life, and that's what that video does. The video is not the case, Debbie Lee is the case. The video is in addition. It's documenting, it's proving. It doesn't lie. It's telling you what she did. It shows her get out of the car. It shows her go in the house on the 19th and the 20th. It shows her wrapping up cellophane and putting pills in it. She asked for the cellophane. That's all part of what she's doing to get it documented so that somebody believes that what she is doing she's doing. That's the whole reason you do it. Can you imagine a female in there talking to a male? You're -- you can't walk in and go, hello [the defendant], can you count the drugs out for me? And I'm not filming you. I don't want you to think I am. Can you imagine that, thinking that you're gonna get caught?

Closing arguments are an important tool during trial, so attorneys are given a wide-range of autonomy when making them, and the trial court has a wide-range of discretion when controlling them. *See State v. Carruthers*, 35 S.W.3d 516, 577-78 (Tenn. 2000) (appendix). "Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." *State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). It is possible for five general areas of prosecutorial misconduct to occur during closing arguments:

(1) intentionally misleading or misstating the evidence; (2) expressing a personal belief or opinion as to the truth or falsity of the evidence or defendant's guilt; (3) making statements calculated to inflame the passions or prejudices of the jury; (4) injecting broader issues than the guilt or innocence of the accused; and (5) intentionally referring to or arguing facts outside the record that are not matters of common public knowledge.

*Id*. "In determining whether statements made in closing argument constitute reversible error, it is necessary to determine whether the statements were improper and, if so, whether the impropriety affected the verdict." *State v. Pulliam*, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996).

Here, the defendant's trial strategy was to challenge Ms. Lee's credibility, and this strategy continued into the defendant's closing argument. The defendant specifically attacked the quality of the video recordings from the transactions, arguing the videos do not "show you [] [the defendant] with those pills in his hand. [They do not] show him handing them to Ms. Lee. [They do not] show him exchanging money for pills." When

- 6 -

viewed in the context of closing argument, the prosecutor's remarks during rebuttal argument were in response to the defendant's attack on both Ms. Lee's credibility and the quality of the videos she recorded while in the defendant's house. *See State v. Ashburn*, 914 S.W.2d 108, 115 (Tenn. Crim. App. 1995) ("Argument that might otherwise be held improper does not constitute error where it is in response to the argument of the defendant.").

Furthermore, in response to the defendant's objection, the trial court instructed the jury to disregard any argument that was inconsistent with the proof, and the jury instructions included a provision that the arguments of counsel are not evidence. We presume the jurors follow those instructions. *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). The defendant is not entitled to relief on this issue.

## II.   Defendant's Right Not To Testify

The defendant also argues the prosecutor, during rebuttal closing argument, improperly commented on the defendant's right not to testify. The State contends the issue has been waived for failure to make a contemporaneous objection and argues plain error review is not appropriate.

Generally, the failure to preserve an issue for appeal results in waiver. Tenn. R. App. P. 36(a). Moreover, by failing to make a contemporaneous objection, a defendant waives appellate consideration of the issue. *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000). However, although the defendant failed to make a contemporaneous objection during trial, this issue was raised in the defendant's motion for new trial, and the trial court ruled on the issue. Thus, we elect to review this issue on its merits.

During rebuttal closing argument, the prosecutor made the following statements:

Gregory South, why is Debbie Lee coming to your home? Have you asked yourself that question? Why -- why, Gregory South, why did she come to your home? Why was she good enough on September the 19th for you to allow her to come to your home? Why, Gregory South, did you open the door and let her in? Why, Gregory South, did you invite her into a (sic) home? Why, Gregory South, did you have a conversation with her? Why, Gregory South, did you sell her [m]orphine, schedule two drugs? Why did you tell her, there's gonna be more [m]orphine drugs here tomorrow? Why, Gregory South, why, why, why, why did that happen.

- 7 -

September the 20th, 2016, why was Debbie Lee good enough?  Why did Greg South allow her to come back to the home?  Why, why, Gregory South, why did you open the door and let her in?  She's such a terrible person, she's a -- she's a criminal.  You know, we have to almost turn from her.  Why -- why did you do that?  Why did you let her in the house?  Why did you open the door for her?  Why did you have a conversation with her?  Why did you sell her more drugs[?]

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  Similarly, article I, section 9 of the Tennessee Constitution provides that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself."  Tenn. Const. art. I, § 9.  Both provisions guarantee criminal defendants the unfettered right to remain silent and not testify at trial.  *Carter v. Kentucky*, 450 U.S. 288, 305 (1981).  Both provisions further prevent the State from commenting on the accused's silence.  *Griffin v. California*, 380 U.S. 609, 615 (1965); *State v. Jackson*, 444 S.W.3d 554, 586 (Tenn. 2014).  It is possible, however, for the State to describe the proof as uncontradicted or make other indirect references to the defendant's silence without infringing on the defendant's Fifth Amendment rights, so long as the defendant is not the only person who could offer the contradictory proof.  *Jackson*, 444 S.W.3d at 586-87 (internal citation omitted).

This Court reviews the propriety of prosecutorial comments regarding the right to remain silent under a de novo standard and applies the following two-prong test:

> (1) whether the prosecutor's manifest intent was to comment on [the] [d]efendant's right not to testify; or (2) whether the prosecutor's remark was of such a character that the jury would necessarily have taken it to be a comment on [the] [d]efendant's decision not to testify.

*Jackson*, 444 S.W.3d at 588.

A non-structural constitutional error does not require automatic reversal. *Chapman v. California*, 386 U.S. 18, 24 (1967); *Jackson*, 444 S.W.3d at 590-91. However, the burden is on the State to demonstrate the error is harmless beyond a reasonable doubt. *Jackson*, 444 S.W.3d at 591.  In determining whether the State has met this burden, we consider "(1) whether the remarks were isolated or extensive; (2) whether the remarks 'came at a critically important juncture in the trial'; (3) the prosecutor's verbal and physical delivery of the remarks; (4) what curative instructions were given and when; and (5) whether the evidence of the defendant's guilt was otherwise

overwhelming." *State v. Colvett*, 481 S.W.3d 172, 208 (Tenn. Crim. App. 2014) (quoting *Jackson*, 444 S.W.3d at 592).

Initially, we note again that the trial court, while ultimately denying the defendant's motion for new trial, expressed concern about the State's closing argument. After reviewing the allegedly improper comments made by the prosecutor, we too are concerned. However, unlike the trial court, we conclude the prosecutor's remarks are of such a character that the jury would necessarily have taken it to be a comment on the defendant's failure to testify, regardless of the prosecutor's intent. In *Jackson*, our supreme court overturned a second degree murder conviction where the prosecutor stood in front of the defendant during rebuttal closing argument, "gestured toward her, and demanded in a loud voice, 'Just tell us where you were! That's all we are asking, Noura!'" *Jackson*, 444 S.W.3d at 589. Here, the prosecutor also referred to the defendant by name. However, instead of one statement, the prosecutor in this case directed eighteen questions at the defendant, imploring him to explain his actions. Like the comment in *Jackson*, the prosecutor's comment came during rebuttal closing argument, depriving the defendant of the opportunity to respond. Additionally, the defendant's affidavit indicates the prosecutor pointed at the defendant, "rais[ed] his voice, turned toward [the defendant], and look[ed] at [the defendant]" while asking the questions. At the hearing on the motion for new trial, the trial court agreed, asking if "there [was] any question about that? I was here that day."

The defendant did not request any curative instructions and none were given. However, the trial court did instruct the jury that the arguments of counsel were not evidence and the jury was to "place no significance on" the defendant's decision not to testify. Finally, although the evidence in this case was sufficient to support the defendant's convictions, it was not overwhelming. Although the State contends the prosecutor's comments were in response to the defendant's attack on Ms. Lee's credibility, we are not persuaded by this argument. The prosecutor's comments implicitly invited the jury to consider the defendant's silence and to question why he refused to testify on his own behalf.

Under these circumstances, the State has failed to prove the prosecutor's unconstitutional comments were harmless beyond a reasonable doubt. We, therefore, reverse the defendant's convictions and remand for a new trial.

### *Conclusion*

Based on the foregoing authorities and reasoning, the judgment of the trial court is reversed and the matter is remanded for a new trial

_____

J. ROSS DYER, JUDGE